## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. CROIX

| | | |
|---|---|---|
| **CRAIG HENDRICKS** | ) | |
| | ) | **CRIMINAL NO. 2004-05** |
| **v.** | ) | |
| | ) | **Civil No. 2010-11** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

_____

### UNITED STATES' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO CORRECT, VACATE AND/OR SET ASIDE SENTENCE AND CONVICTION PURSUANT TO TITLE 28, U.S.C. § 2255

COMES NOW, the United States of America, by and through the United States Attorney for the District of the Virgin Islands, Ronald W. Sharpe, and the undersigned counsel, and hereby opposes the defendant's motion to vacate and/or set aside sentence pursuant to Title 28, United States Code, Section 2255.

### FACTS

Craig Hendricks ("Hendricks") owned a business on St. Thomas entitled Craig's Marine Service which launched and towed boats and assisted in other nautical activities.  To supplement his income, Hendricks trafficked in cocaine.  Hendricks would import the drugs from St. Martin, W.I. and Tortola, B.V.I. and distribute them in the U.S. Virgin Islands and elsewhere.  As a result of his drug dealing activities, he met two individuals from St. Croix named Hector Rivera ("Rivera") and Christopher Schoenbohm ("Schoebohm").  Rivera and Schoenbohm purchased drugs from Hendricks on several occasions.  Hendricks, in turn, purchased boats from Schoenbohm with the assistance of Rivera.  Sometime during this relationship, Rivera became an informant for the U.S. Drug Enforcement Administration ("DEA").  Rivera conducted several drug transactions with Hendricks while being recorded by the DEA.

*Hendricks v. United States of America*, Crim. No. 2004-05
United States' Opposition to Defendant's Motion to Vacate Sentence
Page 2

On April 11, 2003, a St. Thomas grand jury returned a multiple-count indictment against Hendricks and other defendants. On April 27, 2004, the district court suppressed all statements made by government's witness, Hector Rivera, who was murdered in 2003. The government appealed that order, and the Third Circuit reversed. *See United States v. Hendricks*, 395 F.3d 173 (3d Cir. 2005).

On August 3, 2005, the jury convicted all defendants of conspiracy to distribute 5 kilograms or more of cocaine, in violation of *21 U.S.C. § 846* (Count 1), and conspiracy to import 5 kilograms or more of cocaine, in violation of *21 U.S.C. § 963* (Count 11). In addition, Hendricks was convicted of money laundering, in violation of *18 U.S.C. § 1956(a)(1)* (Count 12) and possessing with intent to distribute and distributing 5 kilograms or more of cocaine, in violation of *21 U.S.C. § 841* (Counts 2 and 3). The jury also convicted Hendricks of three additional substantive counts of possessing with intent to distribute and distributing 500 grams or more of cocaine. (Counts 4, 9, and 10). Hendricks was sentenced to 40 years of imprisonment. Hendricks filed a timely appeal. The Third Circuit Court of Appeals affirmed the conviction. *See United States v. Fleming*, No. 07-2822, 2008 WL 3824752 (3d Cir. August 15, 2008). Hendricks then filed this motion to vacate and/or set aside his verdict pursuant to Title 28, United States Code, Section § 2255.

## STANDARDS FOR A 28 U.S.C. § 2255 MOTION

The standard for showing ineffective assistance of counsel is high. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that to prevail on an ineffective assistance of counsel claim, the defendant must prove that counsel provided deficient performance, which resulted in prejudice. To prove that counsel's performance was deficient, the defendant must show that "counsel made errors so serious that counsel was not functioning as guaranteed the defendant

*Hendricks v. United States of America*, Crim. No. 2004-05
United States' Opposition to Defendant's Motion to Vacate Sentence
Page 3

by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  The defendant must show that counsel's representation "fell below an objective standard of reasonableness" based upon the facts "viewed as of the time of counsel's conduct." *Id.* at 688, 690.  Accord, *Keller v. Larkins*, 251 F.3d 408 (3d Cir. 2001); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 295 (3d Cir. 1993) (habeas corpus petitioner claiming ineffective assistance of counsel must show "that counsel made errors so serious that counsel's representation fell below an objective standard of reasonableness").  There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.  "A convicted defendant, making a claim of ineffective assistance, must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690.  Pursuant to *Strickland*, "judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence." 466 U.S. at 689.  Defense counsel cannot be ineffective for failing to raise meritless claims, and counsel's strategic choices are reviewed with a strong presumption of correctness.  *See, Sistrunk v. Vaughn,* 96 F.3d 666, 670 (3d Cir. 1996).

The second component of the *Strickland* test is prejudice.  The Third Circuit has noted, "Under [*Strickland*], to establish ineffective assistance of counsel, a criminal defendant must show that counsel's conduct was deficient (i.e., outside the wide range of professionally competent assistance).  *Id.* at 690.  Also, that the deficiency resulted in prejudice to the defense (i.e., there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).  *Id.* at 694; *See also, United States v. Headley*, 923 F.2d 1079, 1083 (3d Cir. 1991).  Failure to make the required showing of either deficient performance or sufficient prejudice defeats a claim of ineffective assistance of counsel.  *Strickland*, 466 U.S. at 700.  Under

*Hendricks v. United States of America*, Crim. No. 2004-05
United States' Opposition to Defendant's Motion to Vacate Sentence
Page 4

the prejudice prong, "a reasonable probability is sufficient to undermine confidence in the outcome." *United States v. Gray*, 878 F.2d 702, 710 (3d Cir. 1989), quoting *Strickland*, 466 U.S. at 694. A court must consider the totality of the evidence at trial in its prejudice evaluation. "A verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Gray*, 878 F.2d at 711, quoting *Strickland*, 466 U.S. at 696.

**The Requirements for an Evidentiary Hearing Under 28 U.S.C. § 2255.**

Under *28 U.S.C. § 2255*, a motion may be denied without a hearing if "the motion and files and the records of the case conclusively show that the prisoner is entitled to no relief." The Third Circuit has found, when a motion is made under *28 U.S.C. § 2255*, the question of whether to order a hearing is committed to the sound discretion of the district court. In exercising that discretion, the district court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record. Further, the district court must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that the movant is not entitled to relief. *Government of the Virgin Islands v. Bradshaw*, 726 F.2d 115, 117 (3d Cir.), cert. denied, 469 U.S. 829 (1984).

## DEFENSE COUNSEL ADEQUATELY INFORMED HENDRICKS
## OF THE WAIT OF EVIDENCE AGAINST HIM

Hendricks alleges that his counsel failed to advise him of the extent of the government's evidence against him. As a result of this alleged failure, he declined a plea offer and went to trial. As a result of him choosing the trial option, he was not eligible to receive credit for accepting responsibility, as thus, was sentenced to additional time. This argument must fail. Hendricks was fully informed of all the evidence the government possessed before trial.

*Hendricks v. United States of America*, Crim. No. 2004-05
United States' Opposition to Defendant's Motion to Vacate Sentence
Page 5

The Third Circuit states, "a defendant has the right to make a reasonable informed decision whether to accept a plea offer [because] [k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *United States v. Booth*, 423 F.3d 542, 549 (3d Cir. 2005).

"If a defendant raises sufficient allegations that his counsel's advice in helping to make that decision was 'so insufficient that it under mined [the defendant's] ability to make an intelligent decision about whether to accept the [plea] offer', the defendant is entitled to an evidentiary hearing on the merits of his habeas petition." *Id.* F.3d at 549.

In paragraph 5 of defense counsel's declaration, he asserts that he fully informed Hendricks of all of the evidence against him. Exhibit A. Defense counsel further states, in paragraph 6, Hendricks knew of the enormous weight of evidence against him and his co-defendants. The declaration thoroughly contradicts Hendricks' bare allegations. As a result, this allegation must fail. Defense counsel was not ineffective, and fully informed Hendricks of all of the evidence against him and his co-defendants.

## DEFENSE COUNSEL FULLY INFORMED HENDRICKS OF HOW HIS CONDUCT WOULD DETERMINE HIS GUIDELINE RANGE AT SENTENCING

Hendricks asserts that defense counsel failed to advise him of the relevant portions of the sentencing guidelines which would apply to his relevant conduct. Specifically, his role as a pilot and the leader of the conspiracy. This allegation is false.

Defense counsel states, in his declaration, that he informed the defendant that the applicable guideline range included a maximum life sentence. Counsel also indicated that he would be liable for all drugs alleged in the conspiracy, as well as, his leadership role. See Exhibit A. Hendricks has

*Hendricks v. United States of America*, Crim. No. 2004-05
United States' Opposition to Defendant's Motion to Vacate Sentence
Page 6

not submitted a declaration to say otherwise, he only makes a bare allegation.  Therefore, Hendricks'

counsel was not ineffective.

## THE SUPERCEDING INDICTMENT IS CONSTITUTIONALLY SUFFICIENT

Hendricks asserts that his counsel failed to object to the government's broadening of the

superseding indictment.  This broadening, he alleges, allowed a witness to testify about certain

events that was damaging to Hendricks.

An indictment must contain only a "plain, concise, and definite written statement of the

essential facts constituting the offense charged." *Fed.R.Crim*.P. 7(c)(1).  "[T]he Federal Rules were

designed to eliminate technicalities in criminal pleadings and are to be construed to secure simplicity

in procedure.  [D]etailed allegations. . . surely are not contemplated by [Rule 7(c)(1)]." *United States*

*v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007) (quotation marks and citations omitted). An indictment

is sufficient, therefore, so long as it "(1) contains the elements of the offense intended to be charged,

(2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the

defendant to show with accuracy, to what extent he may plead a former acquittal or conviction in the

event of a subsequent prosecution."  *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007)

(quotation marks and citation omitted).  Further, "no greater specificity than the statutory language

is required so long as there is sufficient factual orientation to permit the defendant to prepare his

defense and to invoke double jeopardy, in the event of a subsequent prosecution." *Id*. (quotation

marks and citation omitted); accord, *Hamling v. United States*, 418 U.S. 87, 117 (1974) (similar

standard under constitutional requirements).  To be sure, a defendant may move to dismiss an

indictment for failure "to state an offense." *Fed.R.Crim.P.* 12(b)(3)(B).  But, only in rare

*Hendricks v. United States of America*, Crim. No. 2004-05
United States' Opposition to Defendant's Motion to Vacate Sentence
Page 7

circumstances will an indictment fail to state an offense.  For instance, a dismissal is appropriate if

the charging document omits an essential element of the offense.  See *United States v. Cefaratti*, 221

F.3d 502, 507 (3d Cir. 2000).  Dismissal is likewise appropriate, if the indictment "recites in general

terms the essential elements of the offense, 'but' the specific facts alleged in the charging document

fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." *United*

*States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002)**.**

The superceding indictment contained all of the elements of the crime.  It allowed Hendricks

to properly formulate a viable defense.  Also, it allowed Hendricks the opportunity to plead double

jeopardy, should the occasion arise.  As a result, Hendricks' counsel had no proper basis to object

to the superceding indictment and was not ineffective.

## HENDRICKS WAS NOT DENIED ACCESS TO COUNSEL

During the trial, Hendricks was housed at a federal detention facility in Puerto Rico, and

flown daily to St. Croix.  At the end of the first day of trial, counsel for Robinson[1], asked the district

court to speak with the United States Marshal about problems getting phone access to his client.  The

district court agreed to look into the matter.  The next day, Hendricks' counsel complained that he

could not reach his client after hours and that the breaks during trial were insufficient.  Addressing

the issue in court, the deputy marshal informed counsel that he had spoken to the Warden in Puerto

Rico, and that the phone access issue had been resolved.

Hendricks arrival the next morning was delayed due to violent weather that caused power

outages and flooding and counsel again complained that he had been unable to reach Hendricks by

---

[1] Co-defendant in this matter and also detained in Puerto Rico.

*Hendricks v. United States of America*, Crim. No. 2004-05
United States' Opposition to Defendant's Motion to Vacate Sentence
Page 8

phone.  The district court suggested the telephone problem was likely weather-related and offered

all counsels the opportunity to speak with their clients for "a reasonable period of time" prior to

continuing the trial.  Upon the arrival of the defendant, the district court recessed for over forty-five

minutes, to allow counsel an opportunity to confer with Hendricks.  The next day, the district court

specifically inquired whether both counsels had been able to communicate with their clients the prior

evening.  Hendricks' and Robinson's counsel both acknowledged that they were able to communicate

with their clients and thanked the district court for assisting them.  Trial Transcript ("T.T.") 7/21/05,

pg. 5.

Furthermore, the district court granted Hendricks' counsel permission to confer with his client

in the courtroom while watching a videotape.  Hendricks also met, that same day, with a defense

witness for almost an hour, presumably in his counsel's presence.  No further issues were brought

to the court's attention regarding a lack of access to Hendricks.

Faced with this record, Hendricks' claims that his incarceration in Puerto Rico, violated his

Sixth Amendment right to access to counsel cannot succeed.  A defendant has no constitutional right

to be incarcerated in any particular detention facility.  *Olim v. Wakinekona*, 461 U.S. 238, 245

(1983).  While a defendant must be afforded a reasonable opportunity to consult privately with

counsel, See *18 U.S.C. § 3142(i)(3)*, the district court presiding over the criminal trial has discretion

to determine how best to enforce that right.  *Falcon v. Bureau of Prisons*, 52 F.3d 137, 139 (7th Cir.

1995).  The trial court took reasonable steps to make certain that Hendricks had access to his

counsel.  Any issues regarding a lack of access were met and resolved early in the trial.  Furthermore,

Hendricks fails to state any prejudice he suffered from the purported inability to speak with his

counsel, which he must establish to prove ineffective assistance.  *Cf United States v. Cronic*, 466

*Hendricks v. United States of America*, Crim. No. 2004-05
United States' Opposition to Defendant's Motion to Vacate Sentence
Page 9

U.S. 648, 659 (1984) (defendant must show prejudice absent complete lack of counsel).  The evidence of Hendricks' guilt was overwhelming: he discussed drug deals in coded language on dozens of intercepted calls, possessed vast amounts of unexplained cash, and was caught "red handed" with the proceeds from a March 2003 cocaine deal.  Under these circumstances, Hendricks cannot prove that any inability to communicate telephonically with his counsel for one or two nights prejudiced his right to a fair trial.

## THE VIDEO EVIDENCE WAS NOT ALTERED

Hendricks further asserts that his counsel failed to move for a dismissal upon learning that the lead agent allegedly altered video evidence in the case.  Hendricks cites to the transcript where Agent Tokarz indicated that the video tape could not be altered.  T.T. 7/21/05,  pgs. 49, 52, 58, 60, and 63.

"To show an abuse of discretion, [a defendant] must show the district court's action was 'arbitrary, fanciful or clearly unreasonable'."  *Stich v. United States*, 730 F.2d 114, 118 (3d Cir. 1984).  Hendrick relies on T.T. of July  21, 2005, pg. 63, to bolster his claim.  On page 63, Agent Tokarz admitted that his report stated "addition footage was later added to this tape by SA Rambo, at a separate date and time."  Hendrick fails to cite pages 64-67, of the same transcript, where Agent Tokarz indicates that the added footage was from a different date and time.  Therefore, not relevant or a part of the drug transaction in question.  See the following colloquy:

BY MR. CAPDEVILLE:

Q.    A few moments ago I asked you, Agent Tokarz, about whether these videos can be altered, that is, footage added or footage taken away. And you said no, correct?

A.    Yes.

*Hendricks v. United States of America*, Crim. No. 2004-05
United States' Opposition to Defendant's Motion to Vacate Sentence
Page 10

Q.      That's still your testimony?

A.      Yes, that's correct.

Q.      Could you look at paragraph 8 --

A.      Yes, sir.

Q.      -- and tell me if that suggests something differently?

A.      Yes, sir.

Q.      Yes, it does?

THE WITNESS:        It says that, "Additional footage was later added to this tape by SA Rambo at a separate date and time."

THE WITNESS:        That tape we watched is from March 1st, from the smuggling run on March 1st. The search warrant is March 2nd, the following day, when we purchased the cocaine.

And I'm sorry, but you jump back and forth, and I'm getting a little confused. But March 1st is the date that we watched the smuggling run. March 2nd is the date that we purchased the cocaine and executed the search warrants.

On that videotape, there was footage added at a separate date from a different incident. You just turn the recorder on and keep recording. But it's not footage related to this.

THE COURT:        This footage, as I understand it, that's already, that's part of the recording, can be added to a recording of this kind. But it doesn't alter.

In the light of the colloquy, Hendricks' counsel was not ineffective.

## THERE WAS NO PROSECUTORIAL MISCONDUCT.

Hendricks next argues that the government committed prosecutorial misconduct by knowingly allowing Authur Colleymore ("Colleymore") to commit perjury. This claim must fail because no perjury was committed.

*Hendricks v. United States of America*, Crim. No. 2004-05
United States' Opposition to Defendant's Motion to Vacate Sentence
Page 11

       To prevent prosecutorial misconduct, a conviction obtained when the prosecution's case includes testimony that was known or should have been known to be perjured must be reversed if there is any reasonable likelihood that the perjured testimony influenced the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976). The elements of the claim are that the witnesses perjured themselves, the government knowingly introduced the false testimony, and there is a reasonable likelihood that the perjured testimony influenced the jury. *Id.* Hendricks can not establish any of these elements. The defendant's characterization of the witnesses' testimony as perjured is nothing more than a characterization, and there is no evidence to show that the government knew that the witnesses' testimony was inaccurate or substantially misleading.

       Colleymore did not commit perjury. As a matter of fact, there is an abundace of evidence that his testimony was truthful. He testified that he and Hendricks entered into an agreement to own a restaurant. The agreement is referenced as government's Exhibit 136. See the following colloquy:

Q.    Mr. Collymore, who wrote this exhibit?

A.    I did.

Q.    And what are the terms of this exhibit, of this document?

A.    That I agree to pay him back his $25,000 investment; also to pay back, on top of that, 65 percent of that $25,000.

Q.    And was that 65 percent of the $25,000, interest that you would pay him for that?

A.    Yes.

Q.    And the second signature line, is that your signature?

A.    On the bottom, that's my signature.

Q.    And whose signature is above yours?

*Hendricks v. United States of America*, Crim. No. 2004-05
United States' Opposition to Defendant's Motion to Vacate Sentence
Page 12

> A.    Mr. Hendricks'.
>
> Q.    And were you in the presence of Mr. Hendricks when he signed this?
>
> A.    Yes, I was.
>
> Q.    And was this notarized?
>
> A.    Yes, it is.

T.T. 7/25/05, pg. 272.

The entire agreement was read into the record at T.T. 7/25/05, pgs. 273-274. Collymore also testified about a series of transactions, in which Hendricks gave him several thousand dollars in cash to start the restaurant. T.T. 7/25/05, pgs. 255-259. The mere fact that Hendricks was giving Callymore cash, as a business loan, is suspicious in and of itself. Callymore testified in great detail how, and by what means, he repaid the loans. T.T. 7/25/05, pgs. 276-284. The government presented canceled checks from the bank account of Callymore that were made out to Hendricks. Government's Exhibits 137 and 138. T.T. 7/25/05, pg. 275. The government also played a recorded telephone conversation between Callymore and Hendricks, at which time both parties discussed repayment of the loan. T.T. 7/25/05, pgs. 280-286. These facts prove that Collymore did not commit perjury. Moreover, testimony was offered by several individuals about Hendricks' excessive use of cash during business transactions. Mr. Julian Quetel, testified that Hendricks paid $16,000 in denomination of fives, tens, and twenties for the purchase of a boat engine and parts. T.T. 7/25/05, pg. 305. Callymore did not commit perjury.

As for the allegation that Agent Reynolds did not review other business records that could have been available, Hendricks' counsel addressed the issue during cross examination. Agent

*Hendricks v. United States of America*, Crim. No. 2004-05
United States' Opposition to Defendant's Motion to Vacate Sentence
Page 13

Reynolds testified, during cross examination, that she reviewed thirty (30) files that were given to her, as the result of the raid of Hendricks' home.  T.T. 7/26/05, pgs. 175-177.  The allegation that Agent Reynolds  may not have reviewed all of the financial files relating to Hendricks' business transactions, is not a matter that warrants a mistrial.  That allegation relates to the weight of the evidence.  "A mistrial is a severe remedy - step to be avoided whenever possible, and one to be taken only in circumstances manifesting a necessity therefore." *United States v. Clarke,* 24 F.3d 257, 270 (D.C.Cir.1994).  Hendricks has pointed to no special circumstances in this case which would have required the district court to grant a mistrial.  Thus, his counsel was not ineffective.

### DEFENDANT'S COUNSEL DID OBJECT TO DRUG QUANTITIES

Lastly, Hendricks asserts that his counsel was ineffective because he failed to object to the drug quantities attributable to him as a result of the conspiracy.  This allegation is entirely false.  Counsel's response to the pre-sentence report objects to the drug quantities delineated in the report attributed to Hendricks.  See Exhibit B.  Again, Hendricks' counsel was not ineffective.

Respectfully submitted,

RONALD W. SHARPE
UNITED STATES ATTORNEY

Dated: July 1, 2011                    By: /s/Ishmael A. Meyers, Jr.
                                            Ishmael A. Meyers, Jr.
                                            Assistant United States Attorney
                                            5500 Veteran's Drive, Suite 260
                                            St. Thomas, Virgin Islands 00802
                                            Telephone: (340) 774-5757
                                            Facsimile:  (340) 776-3494

*Hendricks v. United States of America*, Crim. No. 2004-05
United States' Opposition to Defendant's Motion to Vacate Sentence
Page 14

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 1, 2011, I electronically filed the foregoing Government's Opposition to Defendants Motion to Correct, Vacate and/or Set Aside Sentence and Conviction Pursuant to Title 28, U.S.C. § 2255 with the Clerk of the Court using the CM/ECF System and Craig Hendricks, Reg. No. 01904-094, was served by U.S. certified mail, return receipt, to USP Lompoc, 3901 Klein Bldv., Lompoc, CA 93436.

/s/Ishmael A. Meyers, Jr.
Ishmael A. Meyers, Jr.

AFFIDAVIT OF ANDREW CAPDEVILLE

I, Andrew Capdeville being duly sworn, depose and state:

1.      I am a citizen of the United States of America.

2.      I graduated from Syracuse University School of law in May, 1978 and was admitted to the bar the Virgin Islands in 1979.

3.      From October, 1980 until present I have been in the private practice of law in the U.S. Virgin Islands.  As part of my practice I represent defendants in criminal matters in the Virgin Islands District Court as well as the Superior Court of the Virgin Islands.  As a result of my work as a criminal defense attorney, I have become knowledgeable about, and an expert in, federal criminal practice and procedure.

4.      On or about June 25, 2003, I was appointed to represent Craig Hendricks in Criminal number 2004-0005 in the District of St Croix.  This was a St. Thomas case that was transferred to St. Croix.  Mr. Hendricks along with several other individuals was charged with violating the Controlled Substances Act as well as with money laundering.

5.      I received and reviewed all the discovery in the matter.  I was cognizant of all of the evidence against Mr. Hendricks.  I fully informed Mr. Hendricks of all of the evidence against him and discussed the possibility of a plea.

6.      Mr. Hendricks knew the complexity of the case as well as the enormous weight of evidence against him and his co-defendants.  In fact, at the time of my appointment as defense counsel for Mr. Hendricks, he had already engaged in substantial cooperation debriefing with the government agents assigned to this case and was privy to the bulk of the evidence against him.  Shortly after I came on board, Mr. Hendricks informed me that he no longer wished to cooperate and wanted, instead, to go to trial.  Since he already had provided the government with a "roadmap" of the alleged conspiracy, his change of heart made no legal sense to me and I informed him of the probable consequence of a conviction if we went to trial.  My warnings to Mr. Hendricks were so strong that I recall him, at one point, telling me never again to brooch the subject of plea bargaining with him.

        During August, 2005, the attorney-client relationship between the undersigned and Mr. Hendricks had completely broken down and new counsel was appointed to prepare and file post trial motions and attend the sentencing on Mr. Hendrick's behalf.

7.      From the day Mr. Hendricks informed me he would cease all further cooperation with the government, I informed Mr. Hendricks of his applicable guideline range if convicted, which included a maximum sentence of life in jail if he stood trial.  Mr. Hendricks was also informed that he could be liable for all of the drug alleged in the conspiracy as well as his leadership role in the conspiracy.

Exhibit A

8.      It was my understanding at the time that if Mr. Hendricks provided no further cooperation, but would accept responsibility and plead guilty, his cooperation to that point would result in almost no further jail time.  That is how valuable his information was to the government. He rejected my advice not to change strategy and he was informed, based on the evidence he already provided the government, that the drug quantities (in excess of 100 kilos of cocaine); the huge amounts of cash attributed to his drug trafficking activities (in excess of $500,000.00); and his leadership role could all result in a life sentence for him.

FURTHER AFFIANT SAYER NAUGHT:

_____                    Date: _6 - 22 - 11_ (hh)
Andrew L. Capdeville

_____        06/22/2011
Notary Public

NOTARY PUBLIC, Clive Rivera
My Commission Expires: 09/20/2011
NP Commission Number: 651-07

## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CRIMINAL NO. 2004-05-G/C |
| | ) | |
| CRAIG HENDRICKS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT HENDRICKS' RESPONSE TO
## PRESENTENCE INVESTIGATION REPORT AND SENTENCING MEMORANDUM

COMES NOW Defendant Craig Hendricks, by his appointed counsel John H. Benham, and submits this Response to Presentence Investigation Report and Sentencing Memorandum for this Court's consideration at the sentencing hearing scheduled for Friday, June 1, 2007:

**A.   The base offense level stated in the pre-sentence investigation is erroneously inflated.**

The Presentence Investigation Report ("PSI") erroneously elevates the Base Offense Level to 34 on the basis of the special verdict returned by the jury.  The PSI report indicates that the "[s]pecial jury verdict found the defendant, Craig Hendricks, specifically responsible for possessing approximately 21.5 Kilograms of cocaine". *PSI at page 21.*  A copy of the special jury verdict as located in the court's file is attached hereto as Exhibit A.  That form is summarized as follows:

- 5 kilograms or more of cocaine - "yes" on Counts I, II, III and XI;

- 500 grams or more of cocaine - "yes" on Counts IV, IX and X.

Exhibit B

*U.S.A. vs. Craig Hendricks*
District Court of the V.I.
Div. of St. Croix
Criminal No. 2004-05-G/C
DEFENDANT HENDRICKS' RESPONSE TO PRESENTENCE
INVESTIGATION REPORT AND SENTENCING MEMORANDUM
Page 2

Apparently the 21.5 kilogram amount was calculated by adding all the amounts together as identified in the special verdict form. This calculation is erroneous as it results in "double counting" the same narcotics that were the subject of multiple counts in the indictment.

Defendant was found guilty on both Counts II and III of the indictment which alleged illegal possession of 5 kilograms of cocaine (Count II) and possession with intent to distribute (Count III) of 5 kilograms of cocaine, occurring in March 2001. Each of these counts was based on identical drugs, and the weight cannot be doubled simply because the same drugs formed the basis for two separate counts of the indictment. The special verdict as to Counts II and III must be reconciled at a drug weight of 5 kilograms, not 10 as calculated in the PSI.

The same analysis is appropriate for Counts IX and X of the special verdict. Count IX (possession with intent to distribute) and Count X (distribution) are both based on the same 500 grams of cocaine, the acts occurring on March 2, 2003. The special verdict findings on Counts IX and X must be reconciled at a single 500 gram amount, not combined to equal 1 kilogram.

Finally, the special verdict return of "yes" on 5 kilograms as to Count I of the indictment must be disregarded. Count I of the indictment alleges a conspiracy to possess and distribute

*U.S.A. vs. Craig Hendricks*
District Court of the V.I.
Div. of St. Croix
Criminal No. 2004-05-G/C
DEFENDANT HENDRICKS' RESPONSE TO PRESENTENCE
INVESTIGATION REPORT AND SENTENCING MEMORANDUM
Page 3

cocaine.  The overt acts alleged in Count I are the same events and circumstances that form the basis for the distinct crimes alleged in Counts II through X of the indictment.  The special verdict form as returned by the jury has accounted for all the identifiable distinct drug quantities.  Those same drugs cannot be counted again as an additional 5 kilograms as to Count I.

In summary, the PSI "double counts" the quantities of cocaine specifically found by the jury.  The actual amount should be reduced by 10.5 kilograms, to a corrected total of 10 kilograms. The base offense level should be calculated at 32, not 34. *U.S.S.G.* §2D1.1(c)(4).

> **B.  Pursuant to <u>Booker</u>, the enhancements for use of a private aircraft and as an "organizer" cannot stand, as those alleged facts were not proved to a jury beyond a reasonable doubt.**

In 2005, the Supreme Court affirmed its previous holding that:

> Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

<u>United States v. Booker</u>, 543 U.S. 220, 244 (2005) *citing* <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490 (2000).  The PSI increases the offense level by 6 points, based on facts that were not proved to the jury:

*U.S.A. vs. Craig Hendricks*
District Court of the V.I.
Div. of St. Croix
Criminal No. 2004-05-G/C
DEFENDANT HENDRICKS' RESPONSE TO PRESENTENCE
INVESTIGATION REPORT AND SENTENCING MEMORANDUM
Page 4

    - 2 points for use of a private aircraft in the importation of a controlled substance. *PSI at page 23; U.S.S.G. §2D1.1(b)(2)*; and

    - 4 points on the basis that Defendant was an organizer of a criminal activity. *PSI at page 23; U.S.S.G. §3B1.1(a)*.

These "facts", although alleged in the indictment, were not proved to the jury beyond a reasonable doubt, as the jury did not return any special verdict on either of these matters. *See* <u>United States v. Young</u>, 149 Fed.Appx. 107, 111 (3d Cir. 2005); <u>United States v. Goodman</u>, 159 Fed.Appx. 360, 361 (3d Cir. 2005).

    Since these "facts" were not proved to a jury beyond a reasonable doubt, they cannot be used to support a more severe sentence in this matter.

    **Conclusion:** The advisory Sentencing Guideline offense levels are incorrectly calculated in the Presentence Investigation Report. The correct base offense level should be calculated at 32, without any adjustments for the use of a private aircraft, or the Defendant's alleged role as an organizer of the criminal activities.

Date: <u>May 31</u>, 2007                    _____
                                         JOHN H. BENHAM
                                         WATTS, BENHAM & SPREHN, P.C.
                                         No. 1 Frederiksberg Gade
                                         P.O. Box 11710
                                         St. Thomas, VI  00801-4720
                                         Tel:  (340) 774-0673
                                         Fax:  (340) 776-3630
                                         Attorney for Defendant
                                         Craig Hendricks

*U.S.A. vs. Craig Hendricks*
District Court of the V.I.
Div. of St. Croix
Criminal No. 2004-05-G/C
DEFENDANT HENDRICKS' RESPONSE TO PRESENTENCE
INVESTIGATION REPORT AND SENTENCING MEMORANDUM
Page 5

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED That on the 3<u>ST</u> day of May, 2007, I, the undersigned, caused a true and exact copy of the foregoing DEFENDANT HENDRICKS' RESPONSE TO PRESENTENCE INVESTIGATION REPORT AND SENTENCING MEMORANDUM to be served by hand delivery upon:

Delia Smith, Esquire
Assistant U.S. Attorney
Office of the U.S. Attorney
Federal Bldg. and U.S. Courthouse
5500 Veterans Drive, Suite 260
St. Thomas, VI  00802


Rupert W. O'Bryan III
U.S. Probation Officer
Federal Bldg. and U.S. Courthouse
5500 Veterans Drive, Suite 335
St. Thomas, VI  00802

*original 2*

# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

UNITED STATES OF AMERICA,

       Criminal No. 2004-05 G/C

v.

CRAIG M. HENDRICKS

## S P E C I A L   V E R D I C T

### COUNT ONE

Five (5) kilograms or more of cocaine?    Yes ✓    No_____

    or

500 grams or more, but less than five (5) kilograms of cocaine?

    or    Yes_____    No_____

Less than 500 grams of cocaine?    Yes_____    No_____

    and

Marijuana of a detectable amount?    Yes_____    No ✓

### COUNT TWO

Five (5) kilograms or more of cocaine?    Yes ✓    No_____

    or

500 grams or more, but less than five (5) kilograms of cocaine?

    or    Yes_____    No_____

Less than 500 grams of cocaine?    Yes_____    No_____

**EXHIBIT**

tabbies

A

## COUNT THREE

Five (5) kilograms or more of cocaine?          Yes ___✓___          No _____

      or

500 grams or more, but less than five (5) kilograms of cocaine?

      or                                      Yes _____          No _____

Less than 500 grams of cocaine?                 Yes _____          No _____


## COUNT FOUR

500 grams or more of cocaine?

      or                                      Yes ___✓___          No _____

Less than 500 grams of cocaine?                 Yes _____          No _____


## COUNT NINE

500 grams or more of cocaine?

      or                                      Yes ___✓___          No _____

Less than 500 grams of cocaine?                 Yes _____          No _____

COUNT TEN

500 grams or more of cocaine?

       or                                  Yes ✓                    No_____

Less than 500 grams of cocaine?          Yes_____        No_____


COUNT ELEVEN

Five (5) kilograms or more of cocaine?    Yes ✓_____      No_____

        or

500 grams or more, but less than five (5) kilograms of cocaine?

        or                                    Yes_____        No_____

Less than 500 grams of cocaine?          Yes_____        No_____


_____       _____

DATE                               FOREPERSON