# DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| **CRAIG HENDRICKS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Criminal Action No. 2004-0005** |
| | ) | **Civil Action No. 2010-0011** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| ——————————————————— | ) | |

**Attorneys:**
**Craig Hendricks,**
Beaumont, TX
     *Pro Se*

**Joycelyn Hewlett, Esq.,**
**David W. White, Esq.,**
St. Thomas, U.S.V.I.
**Alphonso G. Andrews, Jr., Esq.,**
St. Croix, U.S.V.I.
     *For the Government*

## <u>MEMORANDUM OPINION</u>

**Lewis, Chief Judge**

THIS MATTER comes before the Court on Petitioner Craig Hendricks' ("Petitioner") Motion to Vacate, Set Aside, or Correct Sentence and Conviction Pursuant to Title 28 U.S.C. § 2255 ("Motion to Vacate"). (Dkt. No. 1237). Magistrate Judge Ruth Miller issued a Report and Recommendation ("R&R") in which she recommended that the Court deny Petitioner's Motion to Vacate on all grounds. (Dkt. No. 1355). Petitioner timely filed objections to Magistrate Judge Miller's R&R. (Dkt. No. 1358). For the reasons that follow the Court will (1) accept Magistrate Judge Miller's R&R as modified as stated herein; (2) deny Petitioner's Motion to Vacate; (3) deny

Petitioner's request for an evidentiary hearing; and (4) decline to issue a Certificate of Appealability.[1]

## I.     BACKGROUND

Petitioner, along with seven co-defendants, was charged with various federal offenses in a twelve-count superseding indictment filed on September 30, 2004. The superseding indictment charged that Petitioner played a leadership role in the operation of large-scale drug trafficking and money laundering conspiracies from early 2000 until approximately April 2003. In August 2005, a jury convicted Petitioner on eight counts—one count of conspiracy to possess with intent to distribute cocaine and five substantive counts of possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841 and 846; one count of conspiracy to import cocaine in violation of 21 U.S.C. §§ 952 and 963; and one count of money laundering conspiracy in violation of 18 U.S.C. § 1956. Petitioner was sentenced to a 40-year term of imprisonment to be followed by a 10-year term of supervised release, and was fined $10,000. (Dkt. No. 1131). A Third Circuit panel rejected Petitioner's arguments on direct appeal and affirmed his conviction on August 15, 2008. *United States v. Fleming*, 287 F. App'x 150 (3d Cir. 2008). The United States Supreme Court denied certiorari on January 12, 2009. *Hendricks v. United States*, 555 U.S. 1125 (2009).

---

[1] After Magistrate Judge Miller docketed her R&R, Petitioner filed a Motion for Leave to File Supplemental Brief Pursuant to Federal Rule of Criminal Procedure 15(d) (Dkt. No. 1392) and a corresponding Supplemental Motion to Vacate pursuant to Title 28 U.S.C. § 2255 (Dkt. No. 1393). Petitioner also filed a Motion for Return of Interest on Fine and various corresponding supplements (Dkt. Nos. 1410, 1412, 1413, 1420). Because the Court determined that additional information from the Government was required before it could rule on these motions, the Court entered Orders on August 17, 2018 and September 5, 2018 for further briefing (Dkt. Nos. 1423, 1427), and will rule separately on the motions in due course.

## II.    DISCUSSION

### A.    Motion to Vacate

Following the denial of his petition for certiorari, Petitioner timely filed the instant Motion to Vacate pursuant to Title 28 U.S.C. § 2255. Petitioner raised seven grounds for post-conviction relief, each asserted under the theory of ineffective assistance of counsel. Magistrate Judge Miller recommended that the Court deny each of Petitioner's seven claims in her R&R, and Petitioner timely filed objections to her recommendations as to each of his claims. In light of Petitioner's objections, the Court will review his Motion to Vacate *de novo*. *See* 28 U.S.C. § 636(b)(1)(B) (providing that "[a] judge of the court shall make a de novo determination of those portions of the [magistrate's] report or specified proposed findings or recommendations to which objection is made"). However, to the extent that Petitioner's objections "merely reiterate issues already presented to the magistrate judge," the determinations in the R&R with respect to those issues will be examined under a plain error standard. *Joseph v. Beard*, 2015 WL 1443970, at *4 (E.D. Pa. Mar. 27, 2015) (citations omitted).

#### 1.    Applicable Legal Standards

Title 28 U.S.C. § 2255 ("Section 2255") permits a petitioner to collaterally attack his sentence by moving "the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). A petitioner may seek post-conviction relief where (1) a "sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," (3) "the sentence was in excess of the maximum authorized by law," or (4) the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A court must grant an evidentiary hearing on the issues raised in a Section 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is

entitled to no relief." 28 U.S.C. § 2255(b); *United States v. Tolliver*, 800 F.3d 138, 140 (3d Cir. 2015).

Ineffective assistance of counsel claims can provide a proper basis for relief under Section 2255. *United States v. Travillion*, 759 F.3d 281, 289 (3d Cir. 2014) (citing *United States v. Rad–O–Lite of Phila., Inc.,* 612 F.2d 740, 744 (3d Cir. 1979)). To advance a successful ineffective assistance of counsel claim, Petitioner bears the burden of showing that (1) "counsel's performance was deficient;" and (2) "the deficient performance prejudiced the defense." *Berryman v. Morton*, 100 F.3d 1089, 1094 (3d Cir. 1996) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "[B]oth deficiency and prejudice must be proven to have a valid claim for relief." *Travillion*, 759 F.3d at 289–90 (citing *Strickland*, 466 U.S. at 687).

As to the first prong, Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A reviewing court's "evaluation of counsel's performance is 'highly deferential,'" and courts "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Berryman v. Morton*, 100 F.3d 1089, 1094 (3d Cir. 1996) (quoting *Strickland*, 466 U.S. at 689). In other words, Petitioner carries the burden to demonstrate that "trial counsel's actions 'were not supported by a reasonable strategy.'" *United States v. Washington*, 869 F.3d 193, 204 (3d Cir. 2017), *cert. denied*, 138 S. Ct. 713 (2018) (quoting *Massaro v. United States*, 538 U.S. 500, 505 (2003)).

As to the second prong, Petitioner must establish prejudice through a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. *Id.*

### 2. Grounds One and Two

As a first ground ("Ground One") for post-conviction relief, Petitioner asserts that his counsel failed to apprise him of the strength of the Government's evidence against him and, as a result, he "made an uninformed decision to withdraw the cooperation agreement that had been signed under the position that the Government had absolutely no case against him." (Dkt. No. 1237 at 20-21).[2] The Government argues that Petitioner's claim must fail because his counsel did in fact advise him of the extent of the Government's case against him. In support of this assertion, the Government attaches to its response a sworn affidavit from Petitioner's trial counsel—Andrew Capdeville, Esq.—attesting thereto. (Dkt. No. 1280 at 4-5). Petitioner filed a reply to the Government's opposition—attaching his own (unsigned and unsworn) affidavit in which he attests that Attorney Capdeville did not discuss the extent of the Government's case with him. (Dkt. No. 1295-1). Petitioner argues that, because an evidentiary hearing is required on a Section 2255 motion unless the record conclusively shows that Petitioner is not entitled to relief, an evidentiary hearing is required here to resolve the conflicting accounts. *Id.* at 9-11.

As a second ground ("Ground Two") for post-conviction relief, Petitioner alleges that his counsel failed to advise him regarding the drug quantities that would be attributed to him for

---

[2] Although Petitioner does not distinguish for purposes of his Motion to Vacate among the various attorneys who represented him in proceedings before, during, and after trial, the Court notes that Petitioner was represented by the following counsel throughout the course of the various proceedings: (1) Joseph Mingolla, Esq., represented Petitioner at the time of his arrest; (2) Andrew Capdeville, Esq., was appointed on June 25, 2003 and represented Petitioner during trial; (3) Martial Webster, Esq., was appointed on March 28, 2006 to represent Petitioner following his trial; and (4) John Benham, Esq., replaced Attorney Webster on May 4, 2007 and represented Petitioner at sentencing. (Dkt. No. 1355 at 3).

sentencing purposes under the relevant conduct provisions of the United States Sentencing Guidelines ("Guidelines"), as well as the offense level enhancements that would apply under the Guidelines as a result of Petitioner's role as a boat pilot and leader of the drug trafficking enterprise. (Dkt. No. 1237 at 24). Petitioner alleges that counsel's failure to discuss this information with him prevented him from making a reasonably informed decision as to whether to accept a plea offer. *Id.* at 25. The Government contends—relying again on Attorney Capdeville's affidavit—that Petitioner's counsel in fact informed him of the applicable Guidelines provisions and explained that Petitioner's maximum sentencing exposure was life imprisonment. (Dkt. No. 1280 at 5-6). Petitioner disputes Attorney Capdeville's attestations in the affidavit attached to Petitioner's reply. (Dkt. No. 1295-1).

Magistrate Judge Miller considered Grounds One and Two together. In examining Ground One, she reviewed the transcripts of suppression hearings held on March 26 and March 30, 2004, and concluded from these records that Petitioner twice acknowledged that Attorney Joseph Mingolla—who represented Petitioner in pre-trial proceedings—warned Petitioner about the strength of the evidence against him. (Dkt. No. 1355 at 9-11).[3] She therefore rejected Petitioner's first claim of ineffective assistance of counsel, finding no support in the record for a showing of deficient performance. *Id.* at 11.

As for Ground Two, Magistrate Judge Miller assumed *arguendo* that counsel failed to advise Petitioner regarding the impact of the relevant conduct provisions of the Guidelines, "as the

---

[3] The R&R indicates that the transcript of a March 26, 2004 suppression hearing is docketed on the Court's Case Management/Electronic Case Files ("CM/ECF") system at Docket Number 1160. It appears, however, that the full transcript was not uploaded onto CM/ECF. The original physical transcript is labeled with Docket Number 424, and the Court has relied on the physical transcript in its review of the record and the Magistrate Judge's references to the March 26, 2004 suppression hearing.

record evidence is limited to competing affidavits." *Id.* at 11. She concluded, however, that Petitioner had failed to proffer any evidence to support a finding of ineffective assistance of counsel under the factors identified by the Supreme Court in *Lafler v. Cooper,* 566 U.S. 156 (2012)—and in particular, had offered no evidence of Petitioner's "serious consideration of a plea offer." *Id.*[4] Magistrate Judge Miller found that Petitioner refused to accept responsibility for the crimes charged both before and after his conviction, undermining his assertion that he would have entered a plea deal had his counsel apprised him of the impact of the relevant conduct provisions of the Guidelines. *Id.* at 11-12.[5] She also determined that—even had Petitioner been willing to accept a plea agreement—Petitioner had "proffered no evidence that the District Court would have accepted a plea agreement or that his sentence thereunder would have been less severe than the sentence actually imposed." *Id*. at 12.

Petitioner focuses his objections on the Magistrate Judge's findings with respect to Ground Two, again asserting that the Court must grant Petitioner an evidentiary hearing because the only evidence before it are the conflicting affidavits from Petitioner and Attorney Capdeville. (Dkt. No.

---

[4] Where a petitioner alleges that his decision not to enter into a plea agreement was the result of his counsel's ineffective advice, the petitioner "must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, 566 U.S. 156, 164 (2012). A petitioner must demonstrate a reasonable probability that *each* of these events would have occurred absent counsel's deficient performance. *Shnewer v. United States*, 703 F. App'x 85, 88 (3d Cir. 2017).

[5] Magistrate Judge Miller cited to the transcripts of the March 26 and March 30, 2004 suppression hearings, quoting Petitioner's statements to the effect that he had only signed an earlier cooperation agreement because his family was threatened by federal agents, and that the Government's evidence against him was falsified. *Id.* She also cited to the transcript of Petitioner's sentencing hearing, at which his counsel stated that Petitioner continued to maintain his innocence of the crimes for which he was convicted. *Id.* at 12.

1358 at 2). He also challenges Magistrate Judge Miller's findings with respect to the absence of evidence indicating that Petitioner would have seriously considered a plea agreement or that the District Court would have accepted the plea agreement. Finally, Petitioner asserts that regardless of whether he would have entered into a plea *agreement* with the Government, he would have entered an open guilty plea had he been advised of his sentencing exposure under the relevant Guidelines provisions, and would therefore have benefited from a three-point offense level reduction under the Guidelines for acceptance of responsibility. *Id.* at 2-3.[6]

Following its independent review of the record, the Court adopts Magistrate Judge Miller's factual findings and accepts her recommendation that Petitioner's first ineffective assistance of counsel claim be denied. The Court finds that Petitioner's own testimony at a March 30, 2004 suppression hearing—wherein Petitioner acknowledges that Attorney Mingolla informed him that his conviction at trial was likely given the Government's evidence against him and that Petitioner's sentencing exposure was life in prison—belies Petitioner's claim that counsel was ineffective in failing to inform him about the strength of the Government's case. (Dkt. No. 1155 at 31:9-33:13). Because the record demonstrates that Petitioner was informed about the strength of the Government's case even before Attorney Capdeville began representing him, it is unnecessary for the Court to rely on the conflicting affidavits to resolve the first claim of ineffective assistance of counsel. The Court thus concludes that Petitioner has failed to show that his counsel's performance was deficient with respect to Ground One.

As to Ground Two, in light of the conflicting affidavits from Petitioner and Attorney Capdeville, the Court assumes *arguendo* that Attorney Capdeville failed to advise Petitioner about

---

[6] "An 'open' guilty plea is a plea made by the defendant without the benefit of a plea agreement entered into with the Government." *United States v. Booth*, 432 F.3d 542, 543 n.1 (3d Cir. 2005) (citation omitted).

the possible impact of the applicable Guidelines provisions on Petitioner's sentence. The Court also recognizes that "a defendant has the right to make a reasonably informed decision whether to accept a plea offer because knowledge of the comparative sentencing exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *United States v. Booth*, 432 F.3d 542, 549 (3d Cir. 2005) (quoting *United States v. Day*, 969 F.2d 39, 44 (3d Cir. 1992)) (internal quotation and quotation marks omitted). Where a defendant is "seriously misled about his sentence exposure when the likelihood of his conviction [i]s overwhelming, he receive[s] ineffective assistance of counsel." *Day*, 969 F.2d at 44. If a petitioner makes this showing, he must also establish prejudice by demonstrating, *inter alia*, "a reasonable probability that he would have accepted [a] favorable [plea] offer but for the ineffective advice of his counsel . . . ." *United States v. Vaughn*, 704 F. App'x 207, 213 (3d Cir. 2017) (citing *Lafler*, 566 U.S. at 164).[7]

The Court concludes that, even assuming that Attorney Capdeville had failed to explain the impact of the applicable Guidelines provisions on Petitioner's sentence, Petitioner has failed to establish the requisite showing of prejudice. The record undermines his contention that he would have entered into a plea agreement with the Government had this information been explained.[8]

---

[7] As noted above, a petitioner must also show "that the district court would have accepted the plea, and that 'the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.'" *Vaughn*, 704 F. App'x at 213 (quoting *Lafler*, 566 U.S. at 164)

[8] The Court is also skeptical that Attorney Capdeville's alleged failure to explain the applicable sentencing enhancements supports a finding that Petitioner was "seriously misled" about his sentencing exposure in this case. As discussed above, Petitioner acknowledged during suppression hearings held in March 2004 that Attorney Mingolla advised him both that a conviction was likely at trial and that a sentence of life imprisonment could result. Effective assistance of counsel does not require "anything approaching a detailed exegesis of the myriad arguably relevant nuances of the Guidelines." *Day*, 969 F.2d at 43. Counsel is under no requirement to provide an "exact number" in order to reasonably inform a client regarding his sentencing exposure for purposes of

Although Petitioner signed a cooperation agreement with the Government shortly after his arrest, he later withdrew from the agreement and explained his reasons for doing so during suppression hearings held on March 26 and March 30, 2004.[9] Petitioner maintained that his initial decision to cooperate with law enforcement was the product of coercion by agents who had told him that they had evidence against his family members, and that his family members would be arrested if Petitioner did not cooperate. (Dkt. No. 424 at 27:1-7). Petitioner also maintained that the Government's evidence against him was "all false," and that agents were distorting the meaning of taped conversations they intended to use as evidence against him. *Id.* at 29:6-19. In other words, Petitioner claimed that he was innocent of the crimes charged, and that his decision to cooperate with the Government had been made under duress. Petitioner continued to maintain his innocence following his conviction. (Dkt. No. 1355 at 12).[10]

Based on this record, the Court finds that any claimed failure on Attorney Capdeville's part to explain the applicable Guidelines provisions was not a "but for" cause of Petitioner's decision not to enter into a plea agreement with the Government. Where a petitioner has maintained his

---

a decision regarding the acceptance or rejection of a plea deal. *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013). Because Petitioner was admittedly aware of his maximum sentencing exposure, he should not be heard to complain that he was wronged by Attorney Capdeville's alleged failure to walk him through the specific Guideline provisions that could result in such a sentence.

[9] Petitioner entered into a cooperation agreement in early April 2003 on the advice of Attorney Mingolla. (Dkt. No. 424 at 26:5-13). Petitioner acknowledged at both the March 26 and March 30 hearings that he signed the cooperation agreement after Attorney Mingolla explained to him that the Government would agree to reduce his sentence if he cooperated with law enforcement. (Dkt. No. 424 at 26:15-23; Dkt. No. 1155 at 29:16-21). Petitioner also acknowledged that Attorney Mingolla had informed him that, absent his cooperation with law enforcement, Petitioner's conviction was likely and that he was facing life imprisonment. (Dkt. No. 1155 at 31:19-32:19).

[10] During his sentencing hearing, Petitioner's counsel noted that Petitioner continued to maintain his innocence of the crimes for which he was convicted, and the sentencing Judge therefore refrained from questioning Petitioner about those offenses. (Dkt. No. 1355 at 12).

innocence throughout the proceedings in a case, his ability to demonstrate that he would have accepted a plea agreement had his attorney fully explained his sentencing exposure is undermined. *See, e.g., Osley v. United States*, 751 F.3d 1214, 1224 (11th Cir. 2014) (denying an ineffective assistance of counsel claim based on an attorney's failure to advise a petitioner that he faced a 15-year mandatory minimum sentence where his assertion that "he would have pled guilty had he been properly informed" was "undermined by his repeated claims of innocence"); *Garcia v. United States*, 679 F.3d 1013, 1014 (8th Cir. 2012) (holding that a petitioner failed to demonstrate that he would have pled guilty but for his counsel's erroneous advice where he maintained his innocence on drug distribution charges during plea negotiations, at trial, and at sentencing). Here, the record shows that—despite Attorney Mingolla's warnings about the strength of the Government's case and Petitioner's sentencing exposure of life imprisonment—Petitioner withdrew from a cooperation agreement claiming that his cooperation had been coerced by law enforcement, and thereafter maintained his innocence of the crimes with which he was charged. His present claim that he would have accepted a plea agreement from the Government had Attorney Capdeville explained the impact of particular Guidelines provisions rings hollow, particularly where the record establishes that Petitioner had been made aware that his maximum sentencing exposure was life imprisonment.

For the same reasons, the record evidence also undermines Petitioner's contention that—even absent an agreement with the Government—he would have entered an open guilty plea and benefitted from a three-point offense level reduction for acceptance of responsibility had Attorney Capdeville's assistance been effective. Moreover, even assuming that Petitioner would have entered an open guilty plea and benefitted from the three-point offense level reduction, there is no reasonable probability that the sentence imposed would have been less severe than the 40-year

term of imprisonment he received. Petitioner's offense level calculation at sentencing was 46, with an advisory Guidelines range of life imprisonment. (Dkt. No. 1135 at 39:13-14).[11] With a three-level reduction, Petitioner's offense level calculation would have been 43—which, under the Guidelines, also results in an advisory sentence of life imprisonment regardless of a defendant's criminal history category. *See* U.S.S.G. § 5 Pt. A. Because the three-level reduction would not have affected Petitioner's advisory Guidelines range, Petitioner can show no prejudice, in that he cannot show a "reasonable probability" that his sentence would have been different but for his counsel's alleged errors. *Strickland*, 466 U.S. at 694.

For the foregoing reasons, the Court will deny Petitioner's second claim to ineffective assistance of counsel.

### 3. Ground Three

In his third ground ("Ground Three"), Petitioner argues that the Government committed prosecutorial misconduct by constructively amending the grand jury's indictment when it redacted the word "December" from the fourth overt act charged in Count 1 of the superseding indictment. (Dkt. No. 1237 at 28). With the redaction, the fourth overt act alleged that Petitioner was involved in a successful importation of 100 kilograms of cocaine from St. Martin to St. Thomas "[o]n or about 2001" rather than "on or about *December* 2001." *Id.* Petitioner alleges that this redaction impermissibly broadened the scope of the conspiracy as charged in the superseding indictment, and allowed the Government to improperly link the testimony of witness Ishmael Brathwaite ("Brathwaite") to the fourth overt act even though Brathwaite had left the Virgin Islands in

---

[11] The highest offense level recognized in the Guidelines—both currently and at the time of Petitioner's sentencing hearing in 2007—is 43. In imposing a sentence of 40-years imprisonment, the Judge varied downward from the advisory Guidelines range of life imprisonment.

September 2001. *Id.* at 15.[12] He thus asserts that his trial counsel was ineffective in failing to object to the alleged prosecutorial misconduct.

Magistrate Judge Miller found—and this Court has confirmed—that the superseding indictment as read to the jury omitted references to "December" in relation to the fourth overt act. (Dkt. No. 1355 at 14). The Magistrate Judge concluded, however, that Petitioner failed to show that "the jury convicted him for an offense other than the drug conspiracy as charged by the grand jury in the original superseding indictment" as a result of this redaction. *Id.* at 15. Rather, at best, Petitioner "called into question one of the 19 overt acts alleged in the superseding indictment in furtherance of count one." *Id.* Because the evidence at trial demonstrated numerous *other* overt acts committed in furtherance of the drug conspiracy, Magistrate Judge Miller concluded that— even if his counsel's failure to object to the redaction in the superseding indictment constituted deficient performance—Petitioner was unable to establish prejudice. *Id.* at 16. She therefore recommended that Petitioner's third claim of ineffective assistance of counsel be denied. *Id.*

Although Petitioner initially raised Ground Three under an ineffective assistance of counsel theory, he argues in his objections to the R&R that the Court should also consider Ground Three under a prosecutorial misconduct theory. (Dkt. No. 1358 at 4-6).[13] He asserts that the redaction of

---

[12] Petitioner and the Magistrate Judge refer to this witness as "Braithwaite." The record indicates that the correct spelling of the witness' name is "Brathwaite." (Dkt. No. 875 at 92:22).

[13] Petitioner's argument that Ground Three should be considered under a prosecutorial misconduct theory is not properly before the Court, as "[i]t is well established that a petitioner may not include arguments in his objections [to an R&R] that were not included in his petition." *Henderson v. Dep't of Correction*, 2015 WL 3832949, at *4 (E.D. Pa. June 22, 2015) (collecting cases).

Regardless, for the reasons discussed below, the Court concludes that Petitioner's prosecutorial misconduct claim must fail. To successfully attack his conviction on prosecutorial misconduct grounds, Petitioner must establish that the Government's alleged misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986). "[F]or due process to have been offended, 'the

"December" from the superseding indictment as read to the jury constituted a constructive amendment because it allowed Brathwaite to testify as to drug shipments "that occurred in a time frame not charged in the superseding indictment." *Id.* at 5.

While the Court is perplexed by the alteration to the superseding indictment—which is left unexplained by the record—the Court concludes that Petitioner's third ground for post-conviction relief fails. Under the circumstances here, the omission of the word "December" from the description of one overt act charged in the superseding indictment did not result in a constructive amendment.

"An indictment is constructively amended when, in the absence of a formal amendment, the evidence and jury instructions at trial modify essential terms of the charged offense in such a way that there is a substantial likelihood that the jury may have convicted the defendant for an offense differing from the offense the indictment returned by the grand jury actually charged." *United States v. Daraio*, 445 F.3d 253, 259-60 (3d Cir. 2006) (citing *United States v. Miller,* 471 U.S. 130, 140 (1985)) (additional citations omitted). Prejudice to a defendant results where such a modification "broaden[s] the possible bases for conviction from that which appeared in the indictment." *United States v. McKee*, 506 F.3d 225, 229 (3d Cir. 2007) (citing *United States v. Lee,* 359 F.3d 194, 208 (3d Cir. 2004)). The central question is whether a defendant was "convicted of the same conduct for which he was indicted." *Id.* (quoting *United States v. Robles–Vertiz*, 155 F.3d 725, 729 (5th Cir. 1998)). "If a defendant is convicted of the same offense that was charged in the indictment, there is no constructive amendment." *United States v. Vosburgh*,

---

prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial.'" *Werts v. Vaughn*, 228 F.3d 178, 197–98 (3d Cir. 2000) (quoting *Greer v. Miller,* 483 U.S. 756, 765 (1987)) (internal quotation and additional citations omitted).

602 F.3d 512, 532 (3d Cir. 2010) (citing *United States v. Patterson,* 348 F.3d 218, 227 (7th Cir. 2003)).

Here, Count 1 of the superseding indictment charged that Petitioner and others participated in a drug trafficking conspiracy "[f]rom the early part of 2000 . . . and continuing until approximately April, 2003." (Dkt. No. 544 at 1). The superseding indictment thus placed Petitioner on notice that he would have to defend against evidence of his participation in a drug trafficking conspiracy during that period. The pertinent inquiry is whether the alteration to the superseding indictment broadened the bases for Petitioner's conviction such that he was convicted of an offense that was not charged in the superseding indictment.

At trial, Brathwaite testified that between 2000 and 2001 he and Petitioner traveled to St. Martin to pick up approximately 150 kilograms of cocaine; loaded the cocaine onto a boat in St. Martin; and transported the cocaine by boat from St. Martin to St. Croix and then to St. Thomas—unloading portions of the cocaine on both islands. (Dkt. No. 875 at 98:6-109:13). Brathwaite also testified that Petitioner paid him for his assistance in transporting the cocaine. *Id.* at 110:1-111:2.

Contrary to Petitioner's assertion, Brathwaite's testimony about drug trafficking activities in 2000 to 2001 falls *within* the early 2000 to April 2003 timeframe of the conspiracy charged in the superseding indictment. Because it related to events occurring within the timeframe of the charged conspiracy, Brathwaite's testimony did not result in the jury's consideration of conduct falling *outside* the scope of the charged conspiracy such as might permit the jury to convict Petitioner for uncharged conduct.

Further, in presenting its case against Petitioner, the Government was not obligated to prove each of the overt acts alleged in the superseding indictment, nor was it restricted to presenting evidence related solely to the overt acts charged. *See United States v. Adamo*, 534 F.2d

31, 38 (3d Cir. 1976) (noting that as a general rule in conspiracy cases, "the Government is not limited in its proof at trial to those overt acts alleged in the indictment . . . [and] is under no obligation to prove every overt act alleged."); *see also United States v. Price*, 13 F.3d 711, 724 (3d Cir. 1994) (recognizing that proof of an overt act is not a necessary element of a drug trafficking conspiracy) (citing *United States v. Bey,* 736 F.2d 891, 893-95 (3d Cir. 1984)). Because the Government was not restricted at trial to proof of overt acts alleged in the superseding indictment, nor required to prove every overt act alleged, the omission of the word "December" from the superseding indictment as read to the jury was harmless. Regardless of whether the superseding indictment as read to the jury alleged that Petitioner participated in drug trafficking activities in *December* of 2001 or in 2001 *generally*, Brathwaite's testimony provided evidence of Petitioner's drug trafficking activities *during the course of the conspiracy charged in the superseding indictment*. The jury's consideration of this evidence as it related to the conspiracy charged in Count 1 of the superseding indictment was proper, and the alteration to the superseding indictment did not broaden the possible bases for Petitioner's conviction from those charged.

Accordingly, because the possible bases for Petitioner's conspiracy conviction were not broadened as a result of the omission of the word "December" from the superseding indictment as read to the jury, Petitioner cannot demonstrate that a constructive amendment of the superseding indictment occurred here, nor can he show that he was prejudiced as a result of the alteration. The Court will therefore deny Petitioner's request for post-conviction relief in Ground Three.[14]

---

[14] The Court further notes that the Government introduced evidence apart from Brathwaite's testimony to support Petitioner's conviction on the drug trafficking conspiracy count. This evidence included, *inter alia*, Anthony Ottley's testimony regarding the purchase of six kilograms of cocaine from Petitioner (Dkt. No. 874 at 233:1-237:15), and testimony from Drug Enforcement Administration Agents Joe Tokarz (Dkt. No. 876 at 134:1-146:18), Bryan Bonifant (Dkt. No. 878 at 64:3-68:6), and Robert Lasky (Dkt. No. 878 at 159:12-165:3) regarding confidential source Hector Rivera's controlled purchase of cocaine from Petitioner.

### 4. Ground Four

As a fourth ground ("Ground Four") for post-conviction relief, Petitioner alleges that Drug Enforcement Administration ("DEA") Agent Joe Tokarz altered video evidence that he testified was surveillance footage of a March 1, 2003 drug transaction; that additional footage was added to the video by Special Agent Rambo; and that Petitioner's counsel was aware of the alterations and was ineffective in failing to request a mistrial or dismissal of the indictment on that ground. (Dkt. No. 1237 at 31-33).

Based on her review of the trial record, Magistrate Judge Miller found—and this Court has confirmed—that Attorney Capdeville questioned Agent Tokarz on cross-examination about his ability to alter video footage related to a March 1, 2003 drug transaction. (Dkt. No. 1355 at 27). Agent Tokarz testified that the footage was not altered in any way, but that additional footage from a different incident was recorded on the same videotape. *Id.* Attorney Capdeville continued to press Agent Tokarz on his ability to alter the videotape, but this line of questioning was cut off by the Judge. *Id.* at 27-28. Accordingly, Magistrate Judge Miller concluded that Petitioner's counsel "attempted to develop an argument regarding alterations to the video evidence," but that "the Court's questions undermined the effectiveness of the argument." *Id.* at 28. Because the Magistrate Judge determined that counsel was under no duty to continue to pursue a line of questioning that the Court would not permit, she recommended that Petitioner's ineffective assistance claim be denied. *Id.* at 28-29.

In his Ground Four objections, Petitioner argues that Attorney Capdeville had an obligation to continue questioning Agent Tokarz about the discrepancies between his testimony and written reports regarding the modification of the video evidence. (Dkt. No. 1358 at 11-12). Having reviewed the record, the Court adopts Magistrate Judge Miller's factual findings and accepts her

recommendation that Petitioner's fourth ineffective assistance of counsel claim be denied. The transcript reveals that Attorney Capdeville successfully elicited testimony from Agent Tokarz that footage had been added to the video despite his earlier statement indicating that the video had not been altered in any way. Agent Tokarz acknowledged that a DEA 6 report he created indicated that footage from a separate incident was added to the tape by Special Agent Rambo. (Dkt. No. 877 at 63:9-64:2). The transcript also reveals that the Judge would not permit Attorney Capdeville to phrase his questions to Agent Tokarz about alleged alterations to the video in a manner that would suggest that modification of the *images* contained on the video was possible. *Id.* at 66:1-67:13. Petitioner points to no evidence suggesting that images in the video were modified, as opposed to additional footage being added to the tape. Therefore, because Attorney Capdeville successfully elicited testimony for consideration by the jury that footage had been added to the tape, and in light of the limitations on the questioning imposed by the Judge, Petitioner can show no prejudice resulting from Attorney Capdeville's decision not to examine the issue of modifications to the video further. Accordingly, the relief requested in Ground Four will be denied.

### 5. Ground Five

Petitioner advances two claims in his fifth ground ("Ground Five") for post-conviction relief. First, Petitioner alleges that the Government knowingly presented perjured testimony to the grand jury through witness Arthur Colleymore ("Colleymore") regarding the inclusion of a non-disclosure provision as a term of a loan agreement between Petitioner and Colleymore. (Dkt. No. 1237 at 34). In the superseding indictment, the Government alleged that Petitioner loaned $25,000 to Colleymore in an effort to launder the illegal proceeds of his drug trafficking organization. (Dkt. No. 544 at 22). The superseding indictment also alleged that Petitioner attempted to conceal his involvement in the loan "by ordering the businessman [Colleymore] to sign a non-disclosure

agreement . . . ." *Id.* at 22-23. At trial, however, Colleymore testified that the inclusion of the non-disclosure agreement had been his (Collymore's) suggestion. (Dkt. No. 879 at 274:14-20). Petitioner thus alleges that the Government knowingly presented perjured testimony to the grand jury in the form of Colleymore's allegation that Petitioner had ordered the inclusion of the non-disclosure provision in the loan agreement, and that his counsel was ineffective in failing to move to suppress Colleymore's testimony at trial or moving to dismiss the charges against Petitioner based on this alleged prosecutorial misconduct. (Dkt. No. 1237 at 34-35).[15]

Magistrate Judge Miller concluded that Petitioner's claim that his counsel was ineffective in failing to object to the Government's presentation of allegedly perjured testimony to the grand jury was "deficient on its face." (Dkt. No. 1355 at 19). The Magistrate Judge found that while Petitioner had identified an inconsistency between the language of the superseding indictment and Collymore's trial testimony regarding the inclusion of the non-disclosure provision in the loan agreement, such evidence was insufficient to establish that Colleymore had perjured himself before the grand jury or that the Government had knowingly offered his perjured testimony to the grand jury. *Id.* at 17-18. The Magistrate Judge also found that, even if Petitioner had presented evidence of prosecutorial misconduct and his counsel was ineffective in failing to object thereto, Petitioner was unable to establish prejudice in light of other evidence presented by the Government with respect to the money laundering count. *Id.* at 19-20.

Petitioner counters in his objections that the inconsistency between the language of the superseding indictment and Colleymore's testimony at trial provides conclusive evidence that the

---

[15] Because Colleymore's testimony at trial was favorable to Petitioner, Petitioner's claim that his counsel was ineffective in failing to suppress this testimony at trial has no merit. Accordingly, the Court addresses only Petitioner's argument that his counsel was ineffective in failing to move to dismiss the charges against Petitioner based on alleged prosecutorial misconduct before the grand jury.

Government knowingly introduced perjured testimony. He further agues that the additional evidence of money laundering identified by Magistrate Judge Miller represents no more than "innocuous actions" by Petitioner insufficient to support a jury's guilty verdict on the money laundering charge. (Dkt. No. 1358 at 7-9).

After its independent review of the record, the Court adopts Magistrate Judge Miller's factual findings and concludes that Petitioner's ineffective assistance of counsel claim must fail. First, Petitioner has not shown that the Government knowingly introduced perjured testimony to the grand jury through Colleymore. Assuming that Colleymore's testimony before the grand jury with respect to the non-disclosure provision in the loan agreement conflicted with his testimony at trial, a mere inconsistency in testimony is insufficient to establish perjury. *United States v. Mangiardi*, 173 F. Supp. 2d 292, 307 (M.D. Pa. 2001) (citing *United States v. Thompson*, 117 F.3d 1033, 1035 (7th Cir. 1997)).[16] Rather, "[a] witness commits perjury if he or she 'gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *United States v. Hoffecker*, 530 F.3d 137, 183 (3d Cir. 2008) (quoting *United States v. Dunnigan,* 507 U.S. 87, 94 (1993)). Petitioner has presented the Court with no evidence suggesting that Colleymore intentionally gave false testimony to the grand jury or that the Government knowingly presented such testimony. Because there is no evidence in the record of perjury or the Government's knowing presentation of perjured testimony to the grand jury, the Court concludes that Petitioner has failed to show that Attorney Capdeville was ineffective in failing to seek the dismissal of charges against Petitioner on grounds of prosecutorial misconduct.

---

[16] Petitioner has not provided the Court with a transcript of the grand jury proceedings—much less pointed with specificity to the testimony at those proceedings that he alleges was perjured.

Further, assuming that Petitioner were able to establish that the Government knowingly presented perjured testimony before the grand jury—which he cannot—Petitioner would be unable to establish the requisite showing of prejudice. Even where a showing of prosecutorial misconduct at the grand jury phase is made, a "petit jury's guilty verdict render[s] any prosecutorial misconduct before the indicting grand jury harmless." *United States v. Console*, 13 F.3d 641, 672 (3d Cir. 1993) (citing *United States v. Mechanik,* 475 U.S. 66, 70–72 (1986)); *see also United States v. Bansal*, 663 F.3d 634, 660 (3d Cir. 2011) ("Even if it were true that prosecutors made material misstatements to the grand jury, each of the grand jury's findings of probable cause was later ratified in full by the petit jury, thus curing the defects [the defendant] now alleges.") (citation omitted).

Moreover, although inconsistent with the allegation contained in the superseding indictment regarding the non-disclosure provision in the loan agreement, Colleymore's testimony at trial was *favorable* to Petitioner. Notwithstanding the favorable testimony regarding the genesis of the non-disclosure provision, the jury still returned a guilty verdict against Petitioner on the money laundering count—a verdict supported by ample evidence other than Colleymore's testimony.[17] Accordingly, the Court concludes that any failure by Petitioner's counsel to object to alleged prosecutorial misconduct before the grand jury did not result in prejudice to Petitioner.

---

[17] To establish that Petitioner conspired to launder money as charged in Count 12 of the superseding indictment, the Government had the burden of presenting evidence that Petitioner knowingly agreed with at least one other person to engage or attempt to engage in a financial transaction involving the proceeds of unlawful activity with knowledge that the transaction involved the proceeds of unlawful activity and (1) with the intent to promote the carrying on of unlawful activity or (2) with knowledge that the transactions were designed to conceal the nature, location, source, ownership, or control of the proceeds of unlawful activity. *United States v. Omoruyi*, 260 F.3d 291, 294 (3d Cir. 2001) (citations omitted). Evidence introduced at trial related to Petitioner's cash payments for boat engines and parts, testimony that Petitioner stated to witness David Peltier that he needed to move millions of dollars linked to drug runs to St. Martin, and Petitioner's bank account and Western Union transfer records was sufficient to allow a reasonable

Second, Petitioner claims that the Government intentionally presented incomplete testimony by Agent Jacqueline Reynolds regarding the total amount of Petitioner's legitimate income from his marine business based on an incomplete review of his business records, and that his counsel was ineffective in failing to appropriately lodge an objection to this testimony. (Dkt. No. 1237 at 36-37).

Following her review of the record, Magistrate Judge Miller concluded that, in fact, Agent Reynolds testified on direct examination that she had reviewed only *some* business records from Petitioner's legitimate business. (Dkt. No. 1355 at 21-22). On cross-examination, Attorney Capdeville elicited further testimony from Agent Reynolds that the business records she reviewed were limited to those receipts seized following the execution of a search warrant on Petitioner's home. *Id.* at 24. Accordingly, Magistrate Judge Miller concluded that there was no evidence that the Government introduced perjured testimony through Agent Reynolds, and further, that Petitioner had failed to establish that his counsel's performance with regard to his cross-examination of Agent Reynolds was deficient. *Id.* at 24-25. Petitioner claims in his objections that Attorney Capdeville was aware of additional documents relevant to Petitioner's income from his legitimate business, and that he was ineffective in failing to rely on those documents to impeach Agent Reynolds. (Dkt. No. 1358 at 10).

After its *de novo* review, the Court rejects Petitioner's objections. The record reveals that Attorney Capdeville specifically questioned Agent Reynolds as to whether she had examined all receipts related to Petitioner's business, and Agent Reynolds replied that she had examined only those receipts that were seized following the execution of a search warrant at Petitioner's

---

jury to convict Petitioner on Count 12 even without Colleymore's testimony. (Dkt. No. 1355 at 19-20).

residence. (Dkt. No. 1355 at 24). Thus, the introduction of additional documents pertaining to Petitioner's legitimate business income would not have served to impeach Agent Reynolds' testimony.

Moreover, while Petitioner now questions Attorney Capdeville's decision not to enter other records of income derived from Petitioner's business as evidence, he fails to meet his burden of demonstrating that this decision was not supported by a reasonable trial strategy. For example, Petitioner provides no evidence as to what the business records would establish regarding the total amount of legitimate income Petitioner was earning through his business. If the total amount of this legitimate income was insufficient to explain the Government's evidence of Petitioner's financial transactions—including bank account records evidencing numerous deposits of less than $10,000 each into various accounts, and $68,000 in Western Union transactions—Attorney Capdeville could have reasonably concluded that introducing the additional evidence of Petitioner's legitimate income would be harmful to his defense, as it would leave those transactions unexplained.

Given the "strong presumption" that a defense attorney acts "for tactical reasons"—which has "particular force where a petitioner bases his ineffective-assistance claim solely on the trial record," *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (quoting *Massaro*, 538 U.S. at 505)—the Court concludes that Petitioner has failed to show that Attorney Capdeville was ineffective in failing to introduce additional business records into evidence. Further, because Petitioner has presented no evidence indicating that the introduction of these records would have undermined the Government's evidence that his financial transactions involved income derived from unlawful sources, Petitioner has failed to establish that any prejudice resulted from Attorney Capdeville's performance. *See, e.g., United States v. Massara*, 174 F. App'x 703, 710 (3d Cir. 2006) (rejecting

an ineffective assistance of counsel claim where a petitioner failed to assert "what information []
more witnesses, further investigation, or more extensive cross-examination would have revealed").
The ineffective assistance of counsel claims raised in Ground Five of Petitioner's Motion to Vacate
will be denied.

### 6. Ground Six

As a sixth ground ("Ground Six") for post-conviction relief, Petitioner alleges that—
because he was detained in Puerto Rico and flown to St. Croix daily during the trial of this matter,
and because his counsel was unable to communicate with him by phone while he was held in
Puerto Rico—he was denied the opportunity to consult with his counsel during critical stages of
the case, particularly with respect to the review of *Jencks* materials disclosed during trial. (Dkt.
No. 1237 at 38-42). The Government responds that the trial court appropriately addressed issues
that arose with respect to Petitioner's ability to communicate with counsel during trial such that
Petitioner was not, in fact, denied access to counsel. (Dkt. No. 1280 at 7-9). The Government also
argues that Petitioner fails to show that any prejudice resulted from alleged difficulties in
communication. *Id.*

Magistrate Judge Miller determined that Petitioner's claim in Ground Six, although
"couched as ineffective assistance of counsel," was in fact a Sixth Amendment denial of access to
counsel claim. (Dkt. No. 1355 at 29). Because Petitioner's argument that he was denied access to
counsel as a result of his detention in Puerto Rico during trial was rejected by a Third Circuit panel
on Petitioner's direct appeal, Magistrate Judge Miller determined that Petitioner was barred from
raising the claim again in his Motion to Vacate, and therefore recommended that it be denied. *Id.*
Petitioner argues that a decision by the Court to address his denial of assistance claim would not
constitute relitigation of a claim he presented on direct appeal to the Third Circuit, as he is now

raising the claim in the context of his claim for ineffective assistance of counsel. (Dkt. No. 1358 at 12-13).

Following its independent review of the record, the Court finds that Petitioner argued on direct appeal "that he was denied access to counsel because he was held in Puerto Rico during the trial"—a claim which a Third Circuit panel "carefully considered" and concluded was without merit. *United States v. Fleming*, 287 F. App'x 150, 152, 155 (3d Cir. 2008). In general, "issues resolved in a prior direct appeal will not be reviewed again by way of a § 2255 motion . . . ." *Travillion*, 759 F.3d 281 at 288 (citing *United States v. DeRewal,* 10 F.3d 100, 105 n. 4 (3d Cir.1993)); *see also Barton v. United States*, 791 F.2d 265, 267 (2d Cir. 1986) (holding that "section 2255 may not be employed to relitigate questions which were raised and considered on direct appeal") (collecting cases). While Petitioner brings this claim under an ineffective assistance of counsel theory, his Motion to Vacate asserts that it was the trial court and the United States Marshals Service that impeded his ability to communicate with counsel. (Dkt. No. 1237 at 38-42). Petitioner also recognizes in his Motion to Vacate that his counsel brought the communication issues to the attention of the court during trial. *Id.* at 39. Because Petitioner's Motion to Vacate does not allege that his counsel's performance was deficient but rather asserts that his ability to access counsel was denied, his sixth ground for relief amounts to a request that this Court relitigate the denial of access to counsel claim that the Third Circuit panel resolved on direct appeal—despite Petitioner's claims to the contrary. *See, e.g., Powell v. United States*, 2015 WL 3544843, at *3 (D.N.J. June 1, 2015) (refusing to consider issues raised in a Section 2255 motion by a petitioner who previously raised those issues on direct appeal and then sought "to reassert those claims by calling them ineffective assistance of counsel claims"). The Court refuses to do so, and will deny the request for post-conviction relief raised by Petitioner in Ground Six.

### 7. Ground Seven

As a seventh ground ("Ground Seven") for post-conviction relief, Petitioner alleges that his counsel failed to object to the quantities of drugs attributed to Petitioner by the Probation Office in its Presentence Report ("PSR"), and that this failure to object permitted the Court at sentencing to summarily accept information provided by the Probation Office without making individualized findings as to the drug quantities attributable to Petitioner—thus increasing his Guidelines sentencing range. (Dkt. No. 1237 at 42-44). Following her review of the transcript of Petitioner's sentencing hearing, Magistrate Judge Miller concluded that Petitioner's counsel "specifically objected to the drug quantity listed in the PSR," and that the Court appropriately reviewed the evidentiary basis for the PSR's factual findings regarding drug quantity during the sentencing hearing. (Dkt. No. 1355 at 29-35). The Magistrate Judge therefore concluded that Petitioner's ineffective assistance claim based on counsel's alleged failure to object to the drug quantities as determined in the PSR was meritless. *Id.* at 35.

In his objections, Petitioner repeats his allegation that the Court failed to make individualized findings with respect to the drug quantities that could be attributed to Petitioner for sentencing purposes. (Dkt. No. 1358 at 13-14). Accordingly, the Court will review the Magistrate Judge's determinations on Ground Seven for plain error. *Joseph*, 2015 WL 1443970 *4.

The transcript of Petitioner's sentencing hearing reveals that the Judge entertained arguments by the Government and Attorney Benham—Petitioner's counsel at the time—regarding the drug quantities that should be attributed to Petitioner for sentencing purposes based on the evidence introduced at trial.[18] Attorney Benham specifically objected to the drug quantities

---

[18] In drug trafficking conspiracy cases, "an individual defendant may be held accountable for amounts of drugs involved in reasonably foreseeable transactions conducted by co-conspirators . . . [where] the amounts distributed by the defendant's co-conspirators were distributed 'in

attributed to Petitioner in the PSR. (Dkt. No. 1355 at 31-32). The Judge then reviewed evidence regarding the quantities of cocaine trafficked during the conspiracy as introduced at trial through the testimony of witnesses Brathwaite, Ottley, Schoenbohm, Peltier, and Clarke, as well as law enforcement testimony regarding confidential source Rivera's purchases of cocaine. *Id.* at 33. With respect to Petitioner's involvement, the Judge credited the testimony of witness Brathwaite, who testified at trial that he and Petitioner traveled to St. Martin to pick up 150 kilograms of cocaine, and that prior to that trip he and Petitioner had traveled by boat from St. Thomas to Tortola to pick up 50 kilograms of cocaine. (Dkt. No. 1135 at 33).[19] The Judge found, in light of Brathwaite's testimony with regard to "his description of the method of concealment of cocaine and modes of transportation of the cocaine," that Brathwaite was "an experienced drug dealer, and an experienced compatriot of Mr. Hendricks," and concluded that "the amounts of cocaine trafficked were those which Mr. Brathwaite stated they were." *Id.* at 34.

Attorney Benham argued that this "anecdotal evidence" of witnesses was insufficient to allow the court to make a determination regarding drug quantity. *Id.* at 34. The Judge rejected this

---

furtherance of the . . . jointly-undertaken . . . activity,' were 'within the scope of the defendant's agreement,' and were 'reasonably foreseeable in connection with the criminal activity the defendant agreed to undertake.'" *United States v. Collado*, 975 F.2d 985, 995 (3d Cir. 1992) (citing U.S.S.G. § 1B1.3, Application Note 1). A district court must make an "individualized inquiry into the circumstances surrounding [a] defendant's involvement in the conspiracy . . . to ensure that the defendant's sentence accurately reflects his or her role." *Id.* at 995. However, there is no requirement that "the district court hold extensive hearings to make explicit, particularized findings as to the exact date on which each defendant committed to the conspiracy or the precise contours of each conspirator's agreement." *United States v. Rennert*, 374 F.3d 206, 214 (3d Cir. 2004), *vacated in part on other grounds sub nom. Miller v. United States*, 544 U.S. 958, 125 (2005). Rather, a district court must "provide a procedure" through which "the parties may argue contested sentencing issues"—which is most often undertaken at the sentencing hearing itself. *United States v. Kluger*, 722 F.3d 549, 563 (3d Cir. 2013) (citation omitted).

[19] While the Judge considered the testimony of various other witnesses, Brathwaite's testimony with respect to drug quantities was essential to his determination that Petitioner was responsible for trafficking 150 kilograms of cocaine or more.

argument and appropriately applied a preponderance of the evidence standard in determining—based on the evidence introduced at trial—that Petitioner was responsible for the trafficking of 150 kilograms or more of cocaine. (Dkt. No. 1355 at 34-35); *see, e.g., United States v. Freeman*, 763 F.3d 322, 338 (3d Cir. 2014) (holding that district court's reliance on the testimony of a co-conspirator was appropriate in calculating the drug quantities attributable to a defendant at the sentencing phase).

Petitioner's claim that Attorney Benham failed to object to the drug quantity findings contained in the PSR is simply false, and his claim that the sentencing court failed to make appropriate findings regarding the drug quantities attributable to him is belied by the record. Accordingly, finding no plain error, the Court will adopt Magistrate Judge Miller's recommendation and will deny the ineffective assistance of counsel claim raised in Ground Seven of Petitioner's Motion to Vacate.

### B. Request for Evidentiary Hearing and Certificate of Appealability

Petitioner requests an evidentiary hearing on the claims raised in his Motion to Vacate. A court must grant an evidentiary hearing on the issues raised in a Section 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *United States v. Tolliver*, 800 F.3d 138, 140 (3d Cir. 2015). As discussed above, the Court has determined that the record in this matter conclusively establishes that Petitioner is not entitled to relief on any of the claims raised in his Motion. Petitioner's request for an evidentiary hearing will therefore be denied.

Pursuant to 28 U.S.C. § 2253(a), a final order from a Section 2255 proceeding shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

However, unless a judge issues a Certificate of Appealability ("COA"), such an appeal may not be taken. 28 U.S.C. § 2253(c)(1)(B).

In *Barnes v. United States*, 2018 WL 1905642 (D. Del. Apr. 23, 2018), the court described the standard for issuing a COA:

> A certificate of appealability is appropriate only if the movant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The movant must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

*Id.* at *5. Here, the Court is dismissing Petitioner's Motion after determining that his claims are meritless. The Court is persuaded that reasonable jurists would not find this assessment debatable or wrong. Accordingly, the Court will decline to issue a COA.

### III.    CONCLUSION

For the reasons stated above, the Court will (1) accept Magistrate Judge Miller's R&R as modified as stated herein; (2) deny Petitioner's Motion to Vacate; (3) deny Petitioner's request for an evidentiary hearing; and (4) decline to issue a Certificate of Appealability. An appropriate Order accompanies this Memorandum Opinion.

Date:   September 27, 2018

_____/s/_____
WILMA A. LEWIS
Chief Judge