**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

**CRAIG M. HENDRICKS,**

|   |   |   |
|---|---|---|
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Criminal Action No. 2004-0005** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**Appearances:**

**Craig Hendricks,** *Pro Se*
Beaumont, TX

**Adam F. Sleeper, Esq.**
St. Thomas, U.S.V.I.
     *For the Government*

## MEMORANDUM OPINION

**Lewis, Senior District Judge**

THIS MATTER comes before the Court on Magistrate Judge Emile A. Henderson III's Report and Recommendation ("R&R") (Dkt. No. 1543), in which the Magistrate Judge recommends that the Court deny Petitioner Craig M. Hendricks' ("Hendricks") "Motion for Leave to File Supplemental Brief Pursuant to Fed. R. Civ. [P.] 15(d)" ("Motion to Supplement") (Dkt. No. 1392) and "Motion Requesting the Return of Interest on Fine Collected by the Court" ("Motion to Return Interest") (Dkt. No. 1410). Hendricks timely filed an Objection to Magistrate Judge Henderson's R&R (Dkt. No. 1553) and the Government filed an Opposition to Hendricks' Objection (Dkt. No. 1559). Also before the Court are Hendricks' Second and Third Motions to

Supplement (Dkt. Nos. 1499, 1511)[1]; his Fourth and Fifth Motions to Supplement[2] (Dkt. Nos.

1606, 1636, 1639); Hendricks' Motions and the Government's Motion that relate to the

aforementioned pending Motions ("Related Motions")[3]; and Hendricks' "Interest Motions."

---

[1] The Second and Third Motions to Supplement were not referred to the Magistrate Judge for an R&R. They are addressed on the merits herein.

The Second Motion to Supplement refers to Hendricks' "Motion to Amend Motion for Leave to File Supplemental Brief Pursuant to Federal Rule of Criminal Procedure 15(d) ("Rule 15(d)") and Hendricks' "Motion Requesting the Return of Property and/or Compensation of Property Seized Pursuant to Federal Rule of Criminal Procedure 41(g), with Newly Discovered and Withheld Evidence of Fraud by the Government." (Dkt. No. 1499). The Third Motion to Supplement refers to Hendricks' "Second Motion to Amend Motion for Leave to File Supplemental Brief Pursuant to Federal Rule of Criminal Procedure 15(d) ("Rule 15(d)") and Supplemental Motion to Vacate Pursuant to Title 28 U.S.C. § 2255." (Dkt. No. 1511).

[2] The Fourth and Fifth Motions to Supplement were filed following the issuance of the Magistrate Judge's R&R. Like the Second and Third Motions to Supplement, the merits of those Motions will be addressed herein. Both Motions are substantively similar in that Hendricks argues therein that the Grand Jury's term expired prior to the return of the Superseding Indictment. In addition, the Fifth Motion requests a copy of the Extension Order that was filed with the Clerk's Office.

The Fourth Motion is entitled, "Hendricks' Motion to Amend Motion for Leave to File Supplemental Brief Pursuant to Federal Rule of Criminal Procedure 15(d) ("Rule 15(d)") and Supplemental Motion to Vacate Pursuant to Title 28 U.S.C. § 2255 with Hendricks' Motion to Dismiss Conviction Based on Superseding Indictment Returned by Grand Jury with Expired Term." (Dkt. No. 1606). The Fifth Motion—of which a duplicate copy was filed in each Division of the Court—is entitled "Hendricks Motion to Amend Motion for Leave to File Supplemental Brief Pursuant to Federal Rule of Criminal Procedure 15(d), Supplemental Motion to Vacate Pursuant to Title 28 U.S.C. 2255, Motion to Dismiss Conviction, and Motion for Return of Property Pursuant to Federal Rules of Criminal Procedure 41(g)." (Dkt. Nos. 1636, 1639).

[3] The Related Motions collectively refer to Motions filed by Hendricks requesting status updates or certain relief related to pending matters discussed herein, and the Government's Motion to Strike or in the Alternative, for an Extension of Time to Respond" (Dkt. No. 1583), in response to one of Hendricks' Related Motions (Dkt. No. 1582).

Hendricks' Related Motions are his "Motion to Set a Status Conference" (Dkt. No. 1408); "Motion Requesting Preference Be Given Over Motion Requesting the Return of Interest on Fine" (Dkt. Nos. 1412, 1413); "Motion in Response to the Court's Order and Motion Requesting Additional Discovery" (Dkt. No. 1447); "Supplemental Filing in Response to Government's Opposition Defendant's Motion for Return of Interest and Motion to Dismiss Indictment Post Conviction Based on Government Misconduct" (Dkt. No. 1449); "Supplemental Motion with Exhibits to Hendricks' Supplemental Filing to Response to Government's Opposition to Defendant's Motion

Finally, before the Court is Hendricks' "Supplemental Title 28 U.S.C. § 2255" ("Supplemental Motion to Vacate"). (Dkt. No. 1393).

For the reasons that follow, the Court will adopt in part and reject in part Magistrate Judge Henderson's R&R as stated herein. Specifically, the Court will grant Hendricks' Motion to Supplement to the extent he seeks to assert a claim of perjury based on the Government's filing of its Motion to Deposit, and otherwise deny the Motion to Supplement on the merits; deny the Supplemental Motion to Vacate; deny the Motion to Return Interest; grant Hendricks' Second Motion to Supplement to the extent that he seeks to supplement his Motion to Vacate with

---

for Return of Interest and Motion to Dismiss Indictment Post Conviction Based on Government's Misconduct" (Dkt. No. 1462); "Motion Requesting Additional Discovery" (Dkt. No. 1464); "Motion of Newly Discovered and Withheld Evidence by the Government" (Dkt. Nos. 1465, 1466); "Motion Addressing the COVID-19 Threatening the Federal Bureau of Prison and Motion to Set Status Telephone Call on Pending Motions" (Dkt. No. 1471); "Emergency Motion to Expedite Proceeding on Pending Motions Amid the COVID-19 Pandemic" (Dkt. Nos. 1472, 1473); "Motion Requesting Cause for Unreasonable Delays with Issues of Fraud Before the Grand Jury and Court with Exhibits" (Dkt. No. 1504); "Motion Requesting Status-Update on Pending Motions of Extraordinary or Exceptional Circumstances, Petition for Bail Pending Resolution of 28 U.S.C. §2255 Motion to Vacate All Convictions, and Petitioner Hendricks' Objection to the Magistrate Judge's Report and Recommendation" (Dkt. No. 1565); "Motion to Advance Cause for an Evidentiary Hearing Requesting the Unredaction of FOIPA Request Number 1419566-000 and Prompt Decision on Petitioner Hendricks' Objection to the Magistrate Judge's Report and Recommendation" (Dkt. No. 1566); "Request for Leave to File Motion to Compel Unredacted Discovery Material – FOIPA Request Nr. 1419566-000" (Dkt. No. 1582); "Motion Requesting the Return of Property and/or Compensation of Property Seized Pursuant to Rules of Criminal Procedure 41(g) and Rule 6(g)" (Dkt. No. 1615); "Motion to Amend Hendricks' Response to the Government's Opposition to Third Motion to Amend" (Dkt. Nos. 1624 1625); "Motion for Bail Pending Ruling on Motion to Dismiss Conviction for Unlawfully Impaneled Grand Jury Terms" (Dkt. No. 1632); "Motion Requesting Cause for Unlawful Detention and Unreasonable Delays by Government (Dkt. Nos. 1651, 1654); and "Motion for Leave to File Motion Requesting Court Action on Pending Motions and Challenging Grand Jury Impanelment" (Dkt. No. 1661).

The Interest Motions collectively refer to Hendricks' duplicative filing of "Motion Requesting the Return of Interest on Fine Collected by the Court" ("Motion to Return Interest") (Dkt. Nos. 1409, 1410) and "Supplemental Motion Requesting the Return of Interest on Fine Collected by the Court and Interest and Compound Interest on Returned Money Pursuant to Federal Rules of Civil Procedure 67(b)" (Dkt. No. 1420).

information from the Federal Bureau of Investigation ("FBI") documents he received via a Freedom of Information Act request, and otherwise deny the Second Motion to Supplement on the merits; deny his Third Motion to Supplement; deny his Fourth Motion to Supplement; grant his Fifth Motion to Supplement to the extent that Hendricks will be provided with a stamped copy of the Grand Jury Extension Order, and otherwise deny the Fifth Motion to Supplement on the merits; deny the Interest Motions; and deny as moot, or otherwise without merit, the Related Motions.

## I.    BACKGROUND

Petitioner, along with seven co-defendants, were charged with various federal offenses in a twelve-count Superseding Indictment filed on September 30, 2004. The Superseding Indictment charged that Petitioner played a leadership role in the operation of large-scale drug trafficking and money laundering conspiracies from early 2000 until approximately April 2003. In August 2005, a jury convicted Petitioner on eight counts—one count of conspiracy to possess with intent to distribute cocaine and five counts of possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841 and 846; one count of conspiracy to import cocaine in violation of 21 U.S.C. §§ 952 and 963; and one count of money laundering conspiracy in violation of 18 U.S.C. § 1956. Petitioner was sentenced to a 40-year term of imprisonment to be followed by a 10-year term of supervised release, and was fined $10,000. (Dkt. No. 1131). A Third Circuit panel rejected Petitioner's arguments on direct appeal and affirmed his conviction on August 15, 2008. *United States v. Fleming*, 287 F. App'x 150 (3d Cir. 2008). The United States Supreme Court denied certiorari on January 12, 2009. *Hendricks v. United States*, 555 U.S. 1125 (2009).

Following his unsuccessful appeal, Hendricks filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. (Dkt. No. 1237). This Motion was referred to Magistrate Judge Ruth Miller for an R&R. (Dkt. No. 1351). After Magistrate Judge Miller docketed her R&R, but before

the Court ruled thereon, the Government filed a Motion to Deposit seeking "leave to deposit $20,500.00 into the Court's registry, and for a portion thereof to be used to satisfy [] Hendricks' debt to the United States." (Dkt. No. 1364 at 1). The Government's Motion stated that the money "was seized from Defendant by the FBI at the time of his arrest" and described the money as an "asset owned by [Hendricks]." *Id.* at 1-2. Magistrate Judge George W. Cannon, Jr. granted the Government's Motion to Deposit on the same day it was filed. (Dkt. No. 1365).

Thereafter, but still before the Court ruled on Magistrate Judge Miller's R&R, Hendricks filed the instant Motion to Supplement (Dkt. No. 1392) and a corresponding Supplemental Motion to Vacate pursuant to 28 U.S.C. § 2255 (Dkt. No. 1393). In his Motion to Supplement, Hendricks argues that the Government's Motion to Deposit—which presumes that Hendricks is the rightful owner of the $20,500 that the FBI seized from his home—contradicts the testimony that the Government presented at Hendricks' trial to establish that the funds were FBI "officially advanced funds" issued to confidential sources by the FBI to pay narcotics traffickers. (Dkt. No. 1392 at 2). As a result, Hendricks argues that his convictions should be vacated because the Government's Motion to Deposit proves that the Government knowingly put on perjured testimony at his trial to establish that the $20,500 was not legitimately Hendricks' asset. *Id*. Petitioner also filed the instant Motion to Return Interest, arguing that the $10,000 fine imposed on Hendricks as a part of his criminal sentence should not have included interest, which therefore should be returned to him. (Dkt. Nos. 1409, 1410). Hendricks later filed a supplemental Motion requesting compound interest on the $20,500. (Dkt. No. 1420).

On September 27, 2018, the Court adopted as modified Magistrate Judge Miller's R&R and denied, *inter alia*, Petitioner's Motion to Vacate. (Dkt. Nos. 1440, 1441). However, because the Court determined that additional information from the Government was required before it

could rule on Hendricks' Motion to Supplement and Interest Motion, the Court deferred ruling on those motions and entered Orders on August 17, 2018 and September 5, 2018 for further briefing. (Dkt. Nos. 1423, 1427).

In a Supplemental Brief filed on September 7, 2018, the Government stated, *inter alia*, that it made an error when it filed its Motion to Deposit in 2016. (Dkt. No. 1432 at 4-5). The Government represents that the funds were deposited after it "mistakenly believ[ed] the money was petitioner['s] when actually it was money provided by the Agency to purchase the drugs." *Id.* at 4. The Government asserts that the jury—through its guilty verdict—rejected Hendricks' claim that the funds were Hendricks' legitimate business funds as opposed to FBI official advanced funds used by the confidential informant to purchase the drugs from Hendricks. *Id.* at 5. The Government further asserts that "the currency was part of the funds that law enforcement issued to the confidential source as evidenced by the serial numbers on the bills and the testimony of Special Agent Tokarz." *Id.* at 5.

Thereafter, Hendricks' Motion to Supplement and Motion to Return Interest were referred to Magistrate Judge Henderson for the instant R&R now before the Court. (Dkt. No. 1521). Prior to ruling on the R&R, the Magistrate Judge ordered supplemental briefing, *inter alia*, regarding the "source and ownership of the funds" and "whether there has been any error in paying the fine." (Dkt. No. 1525 at 4).

In its Supplemental Briefing, the Government states that the filing of the Government's Motion to Deposit was made in error. (Dkt. No. 1531 at 1-4). The Government explains that an FBI special agent—who was reviewing the case file years following Hendricks' trial and conviction—did not realize that the $20,500 was a portion of the buy money provided to the confidential informant to purchase the drugs from Hendricks. *Id.* at 2. The Government further

explains that because the $20,500—the amount found in Hendricks' residence—did not match the higher amount of buy money provided to the confidential informant, the special agent failed to realize that the $20,500 was a portion of the buy money. *Id.* The special agent then contacted the United States Attorney's Office regarding the funds. *Id.* The Government represents that an Assistant U.S. Attorney ("AUSA") in the Civil Division then filed the Motion to Deposit after determining that Hendricks had outstanding fines. *Id.* at 2-3. The Government further represents that the AUSA who filed the Motion was not aware of the source of the funds, and that if she were aware, she would not have filed the Motion to Deposit. *Id.* In addition, the Government cites to portions of the trial transcripts for testimony that the buy money was provided to the confidential informant; that the confidential informant used the buy money to purchase the drugs from Hendricks on the same day; and that the special agent who recovered the funds in Hendricks' residence confirmed that the serial numbers on the money recovered matched those provided on the bills provided to the confidential informant. *Id.* at 1-2. Finally, in a footnote to the Supplemental Briefing, the Government states that, in 2022, the special agent confirmed that the $20,500 recovered at Hendricks' residence contains the same serialized numbers as the buy money that had been provided to the confidential informant. *Id.* at 2 n.2.

In his R&R, Magistrate Judge Henderson recommends denying both the Motion to Supplement and the Motion to Return Interest. (Dkt. No. 1543). With regard to the Motion to Supplement, the Magistrate Judge concludes that the Motion "was not filed within the one-year statute of limitations for habeas petitions prescribed by 28 U.S.C. 2255(f)" and does not "relate back" to Hendricks' earlier filed habeas petition. *Id.* at 12, 13-15. Magistrate Judge Henderson also recommends denying Hendricks' Motion to Return Interest because the interest on his fine

was statutorily mandated, and Hendricks is not, therefore, entitled to receive a return on the interest paid. *Id.* at 16.

In his Objection to Magistrate Judge Henderson's R&R, Hendricks argues, *inter alia*, that his Motion to Supplement was properly filed in accordance with Federal Rule of Civil Procedure 15(d) because his original Motion to Vacate was still pending at the time he filed his Motion to Supplement. (Dkt. No. 1553 at 2). Further, Hendricks argues that his Motion to Supplement is premised on the discovery of new evidence—namely the position taken by the Government in its Motion to Deposit. *Id.*

Further, in his Objection, Hendricks states that he disagrees with the Magistrate Judge's conclusion that the Motion to Return Interest should be denied because the interest was statutorily mandated. *Id.* Hendricks also disputes the validity of Magistrate Judge Cannon's Order on the Motion to Deposit, arguing that Magistrate Judge Cannon did not have jurisdiction to rule on that Motion. *Id.*

In its Opposition to Hendricks' Objection, the Government argues, *inter alia*, that Hendricks has waived his arguments by failing to address Magistrate Judge Henderson's conclusion that Hendricks' new Section 2255 claims are time-barred and that the claims do not relate back to the earlier filed habeas petition. (Dkt. No. 1559 at 1). In addition, the Government maintains its position in earlier filings that the $20,500 was buy money provided to a confidential source to purchase drugs from Hendricks, and not Hendricks' own personal funds. *Id.* at 1-2. Further, the Government contends that Hendricks also waived any objection to the Magistrate Judge's recommendation by not challenging the finding that the unchecked box on the Judgment was of no import because the fine was statutorily mandated. *Id.* at 2.

In his Second Motion to Supplement, Hendricks states that he received documents from the FBI via a FOIA request as a result of which he appears to further supplement his claim that the $20,500 belonged to him. (Dkt. No. 1499).  Hendricks also attaches exhibits that he represents were used by the FBI to release the $20,500 and were later used by the Government to pay his fine. (Dkt. No. 1499-1).[4] Hendricks specifically points to a document describing the nature of his interview with law enforcement during the search of his home on March 2, 2003. The document states that Hendricks was questioned about the source of the funds located in his home; Hendricks responded that they were funds from his business; and that the money was needed to pay business expenses and bills. *Id.* at 1499-1 at 11. Hendricks contends that this supports his position that the funds were "discovered" rather than "recovered," contrary to Drug Enforcement Agent ("DEA") Agent Joe Tokarz's ("Tokarz") representation in a report. (Dkt. No. 1499 at 4).

With regard to his Third Motion to Supplement, Hendricks argues that, based on the Government's Motion to Deposit, the Government presented "known fraudulent testimony" before the grand jury and petit jury, which he argues was critical in securing the Superseding Indictment, and ultimately, a conviction against him. (Dkt. No. 1511 at 2, 3). Specifically, Hendricks contends that the Government withheld information from the grand jury that the funds really belonged to Hendricks, and instead presented testimony from Tokarz that the serialized $20,500 was buy funds used during the drug transaction. *Id.* at 3. Further, Hendricks contends that Tokarz testified before the grand jury and petit jury regarding an alleged altered video depicting a March 2, 2003 drug transaction. *Id.* at 2. Referenced in his Third Motion are a Criminal Complaint dated April 4, 2003,

---

[4] Within these exhibits ae unclassified communications within the FBI beginning in 2016 regarding the transfer of the $20,500 located in a vault in San Juan, Puerto Rico and ultimately a deposit to the District Court of the Virgin Islands following Magistrate Judge Cannon's Order granting the Government's Motion to Deposit. (Dkt. No. 1499-1 at 16-22).

Tokarz's grand jury testimony dated April 10, 2003, and FBI documents that Hendricks represents were provided to him via a FOIA request. *Id.* at 2. These documents were filed as exhibits to one of Hendricks' Related Motions. (Dkt. Nos. 1504-1, 1504-2, 1504-3).

In response, the Government filed an Opposition to the Third Motion to Supplement, arguing that Hendricks' claims are time-barred. (Dkt. No. 1512). The Government argues that Hendricks' grand jury claims regarding the use of an alleged altered video does not relate back to the arguments presented in the initial Motion to Vacate; the claims about perjured testimony in regard to the $20,500 are being made four years after his initial Motion to Supplement; and Hendricks has not presented any evidence to render his grand jury claim timely. *Id.* at 4-5.

Finally, in his Fourth and Fifth Motions to Supplement, Hendricks argues that his conviction should be vacated because the Superseding Indictment was returned by a grand jury whose term had expired. (Dkt. Nos. 1606, 1636, 1639). Hendricks claims that the Grand Jury Extension Order—which he asserts was made available to his co-defendant in a separate matter in the St. Thomas/St. John Division of this Court—reflects that the Grand Jury was impaneled beyond the 18-month and 24-month terms permitted by Rule 6(g) of the Federal Rules of Criminal Procedure. *Id.* Hendricks argues that because the Grand Jury's term had expired, the Grand Jury did not have the requisite jurisdiction to return the Superseding Indictment. *Id.* Arguing that there has been an alteration or concealment of the Grand Jury Extension Order because the version in his possession does not contain the Clerk's Office stamp to evidence it was filed with the Clerk's Office, Hendricks requests a copy of the stamped Extension Order. (Dkt. Nos. 1636, 1639).

In response, the Government argues that Hendricks' requested amendments are futile because his claims are time-barred and are non-meritorious. (Dkt. No. 1610). The Government further argues that the Grand Jury's term had not expired because 24 months had not elapsed

between the impanelment date of Grand Jury and the return of the Superseding Indictment on September 30, 2004. *Id.* at 10.

## II.    APPLICABLE LEGAL PRINCIPLES

### A.    Standard of Review

A party may make "specific written objections" to a magistrate judge's report and recommendation "[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1) ("Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court."). The objections must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis of such objection." LRCi 72.3.

When reviewing an R&R, a district judge must review *de novo* "any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").

The Supreme Court has instructed that, although 28 U.S.C. § 636 does not require the judge to conduct a *de novo* review if no objections are filed, the statute "does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard." *Thomas v. Arn*, 474 U.S. 140, 154 (1985). Accordingly, the Third Circuit has held that, even in the absence of objections to a report and recommendation, a district court should "afford some level of review to dispositive legal issues raised by the report." *Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017) (citing *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987)); *see also Ellenburg v. Virgin Islands,* No. CV 23-0035, 2024 WL 4366906, at *1

(D.V.I. Sept. 30, 2024) (citing *Banco Popular de Puerto Rico v. Gilbert*, 424 F. App'x 151, 153 (3d Cir. 2011) ("Even if neither party objects to the magistrate's recommendation, the district court is not bound by the recommendation of the magistrate." (internal quotation omitted) (citation omitted)). The Third Circuit has described this level of review as "reasoned consideration," *Equal Emp. Opportunity Comm'n*, 866 F.3d at 100, which in turn has been interpreted to mean clear error or manifest injustice. *Massie v. Finley*, No. 1:19-CV-01201, 2021 WL 11108887, at *1 (M.D. Pa. June 2, 2021) (quoting 1983 Advisory Committee Notes that the court is only required to "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."); *Cruz v. Chater*, 990 F. Supp. 375, 377 (M.D. Pa. 1998) (noting that court's review is limited to ascertaining whether there is "clear error on the face of the record'"); *see also Pratt v. Marsh*, No. 19-CV-00416, 2021 WL 2188576, at *8 (E.D. Pa. May 28, 2021), *aff'd sub nom. Pratt v. Superintendent Benner Twp. SCI*, No. 21-2328, 2023 WL 5607516 (3d Cir. Aug. 30, 2023) (internal citations omitted) ("Uncontested portions of a report and recommendation, as well as portions to which untimely or general objections are made . . . at the very least . . . should be reviewed for clear error or manifest injustice.").

### B.    Motions to Vacate Under 28 U.S.C. § Section 2255

"'Motions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution.'" *Samuels v. United States*, 2018 U.S. Dist. LEXIS 250760, at *5 (D.V.I. Aug. 16, 2018) (quoting *Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002)); *United States v. Leinenbach*, 413 F. App'x 422, 424 (3d Cir. 2011) ("Should he wish to proceed with his collateral attack on the legality of his federal conviction and sentence, he must do so under 28 U.S.C. § 2255 . . . .); *Massey v. United States*, 581 F.3d 172, 174 (3d Cir. 2009) ("A motion to vacate sentence

pursuant to 28 U.S.C. § 2255 is the means to collaterally challenge a federal conviction or sentence.").

Title 28 U.S.C. § 2255 ("Section 2255") contains limits to the motions to vacate that may be filed under the statute. Subsection (f) imposes a "1-year period of limitation" that runs from the latest of:

> (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C.S. § 2255(f). The "timeliness of a § 2255 motion is determined on a claim-by-claim basis." *United States v. Brown*, 2022 U.S. Dist. LEXIS 90071, at *10 (E.D. Pa. May 19, 2022). "A court will consider whether a claim may proceed based on the relation back doctrine if such amendment occurs after the expiration of the applicable statute of limitations." *Curtis v. Callahan*, 2024 U.S. Dist. LEXIS 79393, at *12 (D.N.J. May 1, 2024) (citation omitted). "[S]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." *Hodge v. United States*, 554 F.3d 372, 378 (3d Cir. 2009) (quoting *Mayle v. Felix*, 545 U.S. 644, 125 S. Ct. 2562, 162 L. Ed. 2d 582 (2005)).

Section 2255(h) also imposes a limit on the filing of successive Section 2255 motions. 28 U.S.C.S. § 2255(h). Specifically, Subsection (h) provides, in pertinent part:

> A second or successive motion must be certified as provided in section 2244 [28 USCS § 2244] by a panel of the appropriate court of appeals to contain—(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense[.]

*Id.* A subsequent Section 2255 Motion or supplement that is filed while adjudication of the original Section 2255 Motion remains pending "should be construed as a motion to amend the [original] § 2255 motion[,]" not as a prohibited successive motion. *In re Womack*, 791 Fed. Appx. 368, 369 (3d Cir. 2020) (citing *United States v. Santarelli*, 929 F.3d 95, 105 (3d Cir. 2019)).

## III.    DISCUSSION

### A.    Motion to Supplement/Supplemental Motion to Vacate

In his R&R, Magistrate Judge Henderson recommends that the Court deny Hendricks' Motion to Supplement, and Hendricks timely filed an Objection. Contrary to the Government's assertion, Hendricks has challenged the propriety of the Magistrate Judge's ruling on his Motion to Supplement. (Dkt. No. 1553 at 1). Therefore, the Court will review the Motion to Supplement *de novo*. *See* 28 U.S.C. § 636(b)(1)(B).

Magistrate Judge Henderson concluded that "Hendricks's Motion to Supplement, filed in 2016, was not filed within the one-year statute of limitations for habeas petitions prescribed by 28 U.S.C. § 2255(f) [and] [t]herefore, the facts set forth therein must 'relate back' to his original § 2255 motion in order to be timely—which the Magistrate Judge concluded that they failed to do. (Dkt. No. 1543 at 12-13). The Court does not agree that Hendricks' Motion to Supplement was untimely under 28 U.S.C. § 2255(f).

While it is true that Hendricks' Motion to Supplement was filed well after a year from "the date on which the judgment of conviction [became] final" pursuant to Section 2255(f)(1), Hendricks' Motion was timely filed within one year of "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence" pursuant to Section 2255(f)(4).

Here, Hendricks' Motion to Supplement is premised on the position taken by the Government in its Motion to Deposit. The first and second elements of Hendricks' alleged perjury claim are that perjury was committed and that the Government knew, or should have known, that Hendricks was the rightful owner of the $20,500 at the time of the agent's testimony that the $20,500 was FBI "officially advanced funds." *See United States v. John-Baptiste*, 747 F.3d 186, 210 (3d Cir. 2014) (quoting *Lambert v. Blackwell*, 387 F.3d 210, 242 (3d Cir. 2004)) (describing the first and second elements of a perjury claim as "(1) [the government's witness] committed perjury" and "(2) the government knew or should have known of his perjury"). Indeed, the Government's filing of its Motion to Deposit—insofar as it allegedly implied that the Government believed that the $20,500 was Hendricks' "asset" that should be deposited in his account and used to pay his fine—is an allegation that bears on the first and second elements of Hendricks' claim. Specifically, it bears on the claim that the Government's witness provided perjured testimony, and that the Government had reason to know that the proffered testimony was untrue.

While the Government's filing of its Motion to Deposit does not prove that the testimony at issue was perjured or that the Government knew or should have known of any alleged perjury, and while the Government asserts that the Motion to Deposit merely reflects error, the Court nonetheless views the filing of the Motion as support for Hendricks' claim—at least for purposes of Section 2255(f)(4)'s statute of limitations. *See, e.g.*, *United States v. Williams*, 2021 U.S. Dist. LEXIS 242805, at *12 (D. Kan. Dec. 21, 2021) (noting that "to trigger a fresh § 2255(f)(4) clock [defendant] needed "facts supporting the claim[.]")[5] Accordingly, the Court concludes that the date

---

[5] In footnote seven of the R&R, Magistrate Judge Henderson observes that Hendricks must have known about his contention that the testimony attributing the $20,500 to officially advanced funds was perjured at the time the testimony was given. (Dkt. No. 1543 at 14 n.7). However, having, or knowing about, a contention must be distinguished from allegedly having evidence to support that

of the Government's filing of the Motion to Deposit is the date that triggers the statute of limitations in Section 2255(f) for Hendricks' Motion to Supplement.

The Government filed its Motion to Deposit on February 3, 2016. (Dkt. No. 1364). Hendricks filed his Motion to Supplement on July 11, 2016. (Dkt. No. 1392). Accordingly, Hendricks' Motion to Supplement was timely filed within one year of the filing of the Government's Motion to Deposit, pursuant to Section 2255(f)(4).[6]  Moreover, because the Motion to Supplement was filed while Hendricks' initial Motion to Vacate was still pending, it does not qualify as a prohibited successive Section 2255 Motion, but rather, as a motion to amend the original Section 2255 motion. *In re Womack*, 791 Fed. Appx. 368, 369 (3d Cir. 2020).

While the Court finds that the Motion to Supplement was timely, the Motion nonetheless fails on the merits. As a preliminary matter, the Government has provided a plausible explanation for the error that it asserts resulted in the filing of the Motion to Deposit. The Government has explained that, years following the trial, the FBI was attempting to close the case and dispose of remaining evidence. (Dkt. No. 1531 at 1). However, those involved in the decision-making regarding the disposal of the funds in the FBI's possession—almost 11 years after the trial—lacked institutional knowledge about the case and thus, the source of the funds. The Government states that the FBI special agent responsible for disposing of the case noted that the $20,500 located in the FBI's possession did not match the $23,000 that was provided to the confidential informant to purchase the drugs from Hendricks and therefore did not appreciate the connection between the

---

contention—which Hendricks, more recently, claims to have obtained with the filing of the Government's Motion to Deposit.

[6] Having found that Hendricks' Motion to Supplement was timely, the Court need not, and does not, address whether the Motion to Supplement relates back to the original Motion to Vacate for purposes of the statute of limitations.

$20,500 and the buy money. *Id.* at 2. The Government also states that the AUSA who ultimately filed the Government's Motion to Deposit was likewise unfamiliar with the source of the funds. *Id.* at 3. Finally, in further investigating this matter in 2022, the Government represents that the bills were again reviewed, and it was confirmed that the serial numbers of the buy money matched the serial numbers of the $20,500 seized from Hendricks' residence. *Id.* at 2. n.2. Accordingly, although the Court—like the Magistrate Judge—finds the circumstances surrounding the filing of the Government's Motion to Deposit rather troubling, the Court also finds that the Government has plausibly explained the source of the error that resulted in the filing of the Government's Motion to Deposit, and has confirmed that the serial numbers of the bills in question do, in fact, match.

In addition to the plausible explanation provided for the error that the Government asserts accounted for the filing of the Motion to Deposit, the Court deems highly significant the amount of evidence that was presented against Hendricks at trial for the particular criminal activities for which he was found guilty and which he now claims was the product of perjured testimony. The evidence presented at trial was not based solely on the testimony of Agent Tokarz. Indeed, the evidence—consisting of photographic, video, and recorded exhibits, as well as oral testimony—as summarized during the Government's closing arguments and reflected in the trial transcript, included that: the confidential informant, identified during trial as Hector Rivera ("Rivera"), traveled from St. Croix to St. Thomas with $23,000 in serialized bills that he had received from FBI agents to conduct the March 2, 2003 drug transaction; Rivera counted the money at Hendricks' residence and confirmed that the bills amounted to $23,000; during the execution of a search warrant at Hendricks' residence on the same day, FBI special agent Robert F. Lasky recovered $20,500 from Hendricks' home and confirmed that the serial numbers on bills recovered at

Hendricks' home matched the serial numbers on bills provided to Rivera; there was a call between Hendricks and Rivera on the same day, in which Hendricks accused Rivera of "dropping breadcrumbs" for law enforcement since Rivera had been to Hendricks' and the co-defendant's residences—the same residences searched by law enforcement—on that day; there were a series of calls between Hendricks and other co-defendants, between two co-defendants, and between Rivera and a co-defendant regarding the search warrants and theories on how law enforcement was alerted. (Dkt. No. 884 at Tr. 50:0-Tr. 58:8). There was also testimony by Agent Tokarz that, later that same day, an FBI agent recovered 3 kilograms of cocaine from Rivera after Rivera was dropped off by a co-defendant to the seaport for his return to St. Croix. (Dkt. No. 876 at Tr. 146:15-Tr. 151:4). Because there is overwhelming evidence with regard to Hendricks' guilt in connection with the March 2, 2003 transaction, relief on his § 2255 Motion is not warranted. *See McGhee v. United States*, No: 1:21-CR-10008, 2025 WL 1699347, at *3 (C.D. Ill. June 17, 2025) (citing *Ducato v. United States*, 315 F.3d 729, 730 (7th Cir. 2002) and *Mendoza v. United States*, 755 F.3d 821, 830 (7th Cir. 2014)) ("Relief is generally unwarranted if the evidence of guilt against the defendant is "overwhelming."); *Mines v. United States*, No. CIV, 10-5163, 2013 WL 6187185, at *8 (D.N.J. Nov. 26, 2013) (citing *Millhouse v. United States*, 09-1951, 2012 WL 3549988, at *6 (E.D. Pa. Aug. 16, 2012)) (denying a § 2255 petition without a hearing because petitioner could not show prejudice from any alleged constitutional violations, as "evidence of petitioner's guilt was overwhelming"); *Collins v. United States*, No. 04-CV-1472, 2005 WL 1705044, at *5 (N.D.N.Y. July 20, 2005) (citing *United States v. Sapia*, 2002 WL 620483, at *4 (S.D.N.Y. Apr. 18, 2002)) (denying § 2255 motion without hearing because the evidence of petitioner's guilt was "overwhelming").

In view of the foregoing, the Court will grant Hendricks' Motion to Supplement to the extent he seeks to supplement his claims to add a claim of perjury in light of the Government's Motion to Deposit. However, the Motion to Supplement will be otherwise denied on the merits.[7]

Further, Hendricks' Supplemental Motion to Vacate (Dkt. No. 1393), which accompanies the Motion to Supplement, will be denied on the merits. Therein, Hendricks also argues—as he does in the Motion to Supplement—that the Government committed prosecutorial misconduct in presenting evidence to the jury that the $20,500 recovered at Hendricks' residence was FBI officially advanced funds rather than Hendricks' legitimate business funds. *Id.* at 2. For the same reasons discussed above regarding the Motion to Supplement, the Court will deny the Supplemental Motion to Vacate on the merits.[8]

### B.    Second Motion to Supplement

In his Second Motion to Supplement, filed on May 14, 2021, Hendricks requests that the Court grant him leave to amend his Motion to Supplement. (Dkt. No. 1499). Hendricks states that, following a Freedom of Information Act ("FOIA") request, he received a letter dated May 4, 2021 from the FBI along with documents regarding the $20,500 that he had requested almost three years

---

[7] Hendricks further maintains that the Magistrate Judge did not have jurisdiction to rule on the Government's Motion to Deposit, arguing that he should have instead issued an R&R to the District Judge regarding the matter, and therefore the Magistrate Judge's ruling should be "reversed immediately and addressed." (Dkt. No. 1553). Assuming—without deciding—that the Magistrate Judge lacked jurisdiction over Hendricks' claims, Hendricks' arguments in this regard are rendered moot because the Court has now reviewed, *de novo*, the issues raised by the Government's Motion to Deposit.

[8] In his Supplemental Motion to Vacate, Hendricks points to two exhibits—DEA-6 Reports— attached to the Motion and represents that "[t]he agents presented in their DEA[-]6 Reports that the serial numbers listed on the controlled funds were not the same as those confiscated on the day that the search warrant was executed." (Dkt. No. 1393 at 6). Upon review of the Reports, the Court does not find this to be an accurate statement because the Court has been unable to locate any such representation in the exhibits.

earlier in 2018. *Id.* at 3. Hendricks cites to an FBI Report dated March 3, 2003 which states that "approximately [$20,000] was discovered in Hendricks' personal safe during the execution of a search warrant"; "Hendricks was questioned about the origin of the money and he responded that it was derived from his business"; and "Hendricks said that he needed the money to pay business expenses and other bills." (Dkt. No. 1499-1 at 11). Also included in the FBI documents are reports related to the deposit of the funds into the Court's Registry. *Id.* at 13-17. Hendricks briefly mentions, but without further specifics, that the Government "allowed the inaccurate testimony and fraudulent information to proceed uncorrected before the grand jury." *Id.* at 5.

Because Hendricks' new factual claims regarding the FBI documents were made within one year of "the [May 4, 2021] date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence" pursuant to Section 2255(f)(4), the Court will grant the Second Motion to Supplement to the extent that Hendricks seeks to supplement his Motion to Vacate with additional information from the FOIA request.

However, once again, the Second Motion to Supplement fails on the merits. The documents to which Hendricks points does nothing more than recite Hendricks' position that the money belonged to him. (Dkt. No. 1499-1 at 11). It adds nothing to the position that he advanced to the jury and which they apparently rejected in finding him guilty. Accordingly, for the same reasons expressed above on the Motion to Supplement, the Court finds that the Second Motion to Supplement fails on the merits.

### C.    Third Motion to Supplement

In his Third Motion to Supplement, Hendricks argues that, based on the Government's Motion to Deposit, the Government presented "known fraudulent testimony"—Tokarz's testimony regarding the source of the $20,500 and alleged altered videos of a drug transaction—in obtaining

the Superseding Indictment from the grand jury and conviction by the petit jury against Hendricks. (Dkt. No. 1511 at 2). Hendricks requests that the Court grant him discovery of grand jury material "used in charging [Counts] 1, 9, 10, and 12, of the Superseding Indictment" relating to the $20,500 and the alleged altered videos presented to the grand jury. *Id.* The Court will deny the Third Motion to Supplement.

First, the Court will deny the Third Motion to Supplement as it relates to Tokarz's testimony regarding the source of the $20,500 and the alleged altered videos of a drug transaction. Even assuming—without deciding—that the statute of limitations could be tolled for Hendricks' new grand jury claims, those claims would still be rendered moot under the circumstances here. Preliminarily, as can be discerned from the discussion above, the Court does not credit Hendricks' argument that Tokarz's testimony was perjured. In any event, as this Court previously noted in its Memorandum Opinion resolving Hendricks' initial Motion to Vacate, "even where a showing of prosecutorial misconduct at the grand jury phase is made, a 'petit jury's guilty verdict render[s] any prosecutorial misconduct before the indicting grand jury harmless.'" (Dkt. No. 1441 at 21) (citing *United States v. Console*, 13 F.3d 641, 672 (3d Cir. 1993)) (citing *United States v. Mechanik*, 475 U.S. 66, 70–72 (1986)); *see also United States v. Bansal*, 663 F.3d 634, 660 (3d Cir. 2011) ("Even if it were true that prosecutors made material misstatements to the grand jury, each of the grand jury's findings of probable cause was later ratified in full by the petit jury, thus curing the defects [the defendant] now alleges.") (citation omitted). Thus, in light of the petit jury's guilty verdict in this case—which the Court has found, in response to Hendricks' First and Second Supplements, withstands any claimed perjury—any alleged prosecutorial misconduct before the grand jury would be rendered harmless.

Further, the Court has previously rejected Hendricks' arguments regarding the alleged altered video evidence to which Tokarz testified in the context of Hendricks' ineffective assistance of counsel claim. (Dkt. No. 1441). In that regard, the Court found, *inter alia*, that Hendricks had "point[ed] to no evidence suggesting that images in the video were modified, as opposed to additional footage being added to the tape." *Id*. Having previously addressed this latter issue, it need not be addressed again.

Accordingly, Hendricks' Third Motion to Supplement will be denied. Likewise, Hendricks' related request for discovery of grand jury material relating to the $20,500 and alleged altered video evidence will be denied. In light of the findings above, Hendricks has not demonstrated the requisite need for this material. *See United States v. Underwood*, No. CV 23-35, 2025 WL 1506233, at *4 (W.D. Pa. May 27, 2025) (citing *United States v. McDowell*, 888 F.2d 285, 289 (3d Cir. 1989) ("To warrant disclosure of grand jury materials under Rule 6(e), Defendant bears the 'heavy burden' of demonstrating a 'particularized need that outweighs the public's interest in secrecy.'").

### D.   Motion to Return Interest

In his R&R, Magistrate Judge Henderson determined that the interest imposed on Hendricks' fine was statutorily mandated, and thus his Motion to Return Interest should be denied. (Dkt. No. 1543 at 15-17). The Court agrees.

Title 18 U.S.C. Section 3612 provides, in pertinent part:

the defendant shall pay interest on any fine or restitution of more than $2,500, unless the fine is paid in full before the fifteenth day after the date of the judgment.

18 U.S.C. § 3612(f)(1). As part of its Judgment, the Court imposed a fine of $10,000 against Hendricks. (Dkt. No. 1425-1 at 6). Because that amount is higher than $2,500, the payment of interest was statutorily mandated if Hendricks did not pay the fine prior to the fifteenth day after

the date of Judgment. By all appearances—as supported by the fact that the Government sought to apply the $20,500 funds to Hendricks' outstanding fine over eight years after Judgment[9]—the fine was not paid before the fifteenth day after the Judgment was imposed. Therefore, as the Magistrate properly found, the interest applied to the fine was statutorily mandated. *United States v. Rostan*, 565 F. App'x 798, 800 (11th Cir. 2014) ("The obligation that [a federal criminal defendant] pay interest is triggered by statute.").

Further, Hendricks' argument that the Judgment did not require him to pay interest due to the unchecked box next to the Interest Statement on the Criminal Monetary Penalties form is equally unavailing. *Id.* ("There is no requirement that the judgment form express the default requirement that the defendant pay interest on the restitution ordered."). When a district court is simply "silen[t] on the matter, it is clear that the court did not exercise its discretion . . . to waive or limit the interest requirements." *Id.*; *see also United States v. Posso*, No. 18-CR-120-1, 2022 WL 17736665, at *4 (M.D.N.C. Dec. 16, 2022) (citing 18 U.S.C. § 3612(f)(3)(A)-(C) and stating that "[i]f the court determines that the defendant does not have the ability to pay interest under this subsection, the court may—(A) waive the requirement for interest; (B) limit the total of interest payable to a specific dollar amount; (C) limit the length of the period during which interest accrues."). Because the Court did not opt to exercise its discretion in any of the prescribed ways to waive or limit the payment of interest, but instead was simply silent on the matter, the governing statute mandates the payment of interest. Accordingly, the Court will deny Hendricks' Motion to Return Interest (Dkt. Nos. 1409, 1410).

---

[9] The Judgment (Dkt. No. 1425-1) was entered on June 1, 2007, and the Government's Motion to Deposit (Dkt. No. 1365) was filed on February 3, 2016.

Finally, because the Court finds that the interest applied to Hendricks' fine was statutorily mandated and that he is not entitled to a return of his interest payments, the Court finds that Hendricks' later request (Dkt. No. 1420) for compound interest on any funds returned is moot.

### E.    Fourth and Fifth Motions to Supplement

Even assuming—without deciding—that Hendricks' Fourth and Fifth Motions to Supplement were timely pursuant to Section 2255, the claims would still fail on the merits.

Once impaneled, a grand jury must serve until the court discharges it, but it may serve more than 18 months only if the court, having determined that an extension is in the public interest, extends the grand jury's service. Fed. R. Civ. P. 6(g). An extension may be granted for no more than six months. *Id.* The eighteen-month period of service begins when the grand jury is impaneled and sworn-in. *United States v. Taylor, 841* F.2d 1300, 1303 n.3 (7th Cir. 1988) ("The term of a grand jury starts on the date of impanelment, which is the date it is first convened."); *United States v. Carver*, 671 F.2d 577 (D.C. Cir. 1982) (per curiam) (citing *United States v. Armored Transp., Inc.*, 629 F.2d 1313, 1316 (9th Cir. 1980)) ("The impaneling and swearing in of the grand jury begins its 18-month period of service."); *Armored Transp.*, *Inc.*, 629 F.2d at 1316 ("Armored Transport argues that the legislative history of Rule 6(g) requires the impanelment date to be the first day of service for the grand jury. We agree.").

Although the Grand Jury Empanelment Order in this matter was entered on September 23, 2002, the Order provides that the Grand Jury would be impaneled on October 4, 2002. (Dkt. No. 1606-1). In addition, the Grand Jury Extension Order reflects that the Grand Jury was, in fact, empaneled on October 4, 2002. (Dkt. No. 1606-2). Pursuant to Rule 6(g) of the Federal Rules of Criminal Procedure, October 4, 2002 is thus the date used to calculate the Grand Jury's term of service. *See, e.g.*, *Taylor*, 841 F.2d at 1303 n.3. With the twenty-four month maximum term,

October 4, 2004 was the operative deadline. Indeed, on February 26, 2004, District Judge Thomas K. Moore, the presiding Judge at the time, extended the Grand Jury's term to October 1, 2004.[10] (Dkt. No. 1606-2). The Superseding Indictment was returned on September 30, 2004—one day prior to the Grand Jury's expiration. Therefore, when the Superseding Indictment was returned, the Grand Jury was properly impaneled.[11] Because Hendricks' claims regarding the alleged impropriety of the Grand Jury have no merit, the Court will deny Hendricks' Fourth and Fifth Motions to Supplement.

With regard to his Fifth Motion to Supplement, the Court will grant Hendricks' request for a copy of the Extension Order filed with and stamped by the Clerk's Office. The Court has reviewed the Extension Order and has confirmed that the Extension Order was received by, and filed with, the Clerk's Office on February 26, 2004. Indeed, Hendricks filed a copy of the same Extension Order—without the Clerk's stamp visible—with his Fifth Motion to Supplement (Dkt. No. 1606-2).[12] Nonetheless, the Court will provide Hendricks with a copy of the stamped Extension Order on this occasion because the substance of the Order is at issue and the Order is a "ministerial record" that "do[es] not pose any risk of revealing matters actually presented to the

---

[10] In the Extension Order that was stamped as received by the Clerk's Office on February 26, 2004, the typewritten extension date of October 29, 2004 was changed to October 1, 2004 in wet ink. (Dkt. No. 1606-2).

[11] The Superseding Indictment is not electronically available on the Court's docket. However, the docket reflects that the Superseding Indictment was filed on September 30, 2004. The Court has reviewed the Superseding Indictment, which indicates that it was returned by the Grand Jury on September 30, 2004—as Hendricks acknowledges—and filed with the Clerk's Office on the same day.

[12] The Court does not credit Hendricks' assertion that there has been any alteration or concealment of the Grand Jury Extension Order because the Clerk's Office stamp is not visible on the copy in Hendricks' possession. In reviewing the issue, the Court discovered that the Clerk's Office stamp—which is on each of the two pages of the Order—fades when copies are made from copies of the stamped Grand Jury Extension Order.

grand jury or undermining the grand jury's deliberative process." *See, e.g.*, *In re Grand Jury Investigation*, 903 F.2d 180, 182 (3d Cir. 1990) ("disclosure of the commencement and termination dates of the grand jury does not disclose the essence of what took place in the grand jury room . . . . [and] does not violate the freedom and integrity of the deliberative process of the grand jurors."); *United States v. Benoit,* No. 2010-39, 2012 WL 12837896, at *2 (D.V.I. Jan. 5, 2012) (providing the defendants with "any order reflecting the beginning or extension of the term of the grand jury"); *United States v. Diaz*, 236 F.R.D. 470, 479 (N.D. Cal. 2006) (granting defendants' request for court's orders reflecting commencement or extension of the grand jury's term, noting that the grand jury was no longer sitting and it was not apparent how disclosure would pose a risk to any jurors).

In sum, the Court will deny the Fourth Motion to Supplement on the merits. The Court will grant the Fifth Motion to Supplement to the extent that Hendricks will be provided with a stamped copy of the Grand Jury Extension Order, and otherwise deny the Fifth Motion to Supplement on the merits.

## IV.    CONCLUSION

In view of the foregoing, the Court will adopt in part and reject in part Magistrate Judge Henderson's R&R as stated herein. Specifically, the Court will grant Hendricks' Motion to Supplement to the extent he seeks to assert a claim of perjury based on the Government's filing of its Motion to Deposit, and otherwise deny the Motion to Supplement on the merits; deny the Supplemental Motion to Vacate; deny the Motion to Return Interest; grant Hendricks' Second Motion to Supplement to the extent that he seeks to supplement his Motion to Vacate with information from the Federal Bureau of Investigation ("FBI") documents he received via a Freedom of Information Act request, and otherwise deny the Second Motion to Supplement on the

merits; deny his Third Motion to Supplement; deny his Fourth Motion to Supplement; grant his Fifth Motion to Supplement to the extent that Hendricks will be provided with a stamped copy of the Grand Jury Extension Order, and otherwise deny the Fifth Motion to Supplement on the merits; deny the Interest Motions; and deny as moot, or otherwise without merit, the Related Motions.[13]

An appropriate Order accompanies this Memorandum Opinion.

Date:   July 30, 2025                                    _____/s/_____
                                                        WILMA A. LEWIS
                                                        Senior District Judge

---

[13] Because Hendricks requested status updates regarding his then pending Motions which are now addressed herein, and the relief which he requests is not warranted, his Related Motions are denied as moot or otherwise without merit. The Government's Related Motion—which responds to one of Hendricks' Motions—is likewise denied as moot.